OPINION
{¶ 1} Appellant, C.C.I. Supply, Inc. ("CCI") appeals from the Montgomery County Common Pleas Court judgment, permitting Appellee, Christopher L. Masden ("Masden") *Page 2 
to participate in the Worker's Compensation fund for the condition of right shoulder rotator cuff tear.
 {¶ 2} The record indicates that Masden was injured during an altercation in October 2005 when he was sent to work at a new Sam's Club construction site in Utica, Michigan at the direction of his employer, CCI. Masden was hired as a carpenter by CCI in early 2005. During his employment with CCI, Masden worked at various work sites, both within and outside of Ohio at the direction of his employer. In October 2005, CCI assigned Masden and his crew to work at a site in Utica, Michigan. The crew was composed of four members: Christopher Masden, his brother, Charles Masden, Jerry Keating, and Chad Demory. Masden was required to lodge at the Best Value Inn, located approximately one mile from the Sam's Club work site. According to Masden, the motel was a less than desirable location where there was a presence of a prostitute living on the premise and excessive drinking among the lodgers. The motel was selected and paid for by CCI, and it was necessary for Masden to lodge there because the Best Inn was the only motel for which CCI would pay.
 {¶ 3} On the night of the injury after a full workday, Christopher and Charles Masden heard a commotion outside their door, and Charles Masden got out of bed and opened his door. A man who lived next door was drinking and arguing with another woman outside their door. Charles Masden told them to take it somewhere else so they could get a good night's rest. In response, the man took a swing at Charles Masden with a beer bottle but missed. A fight ensued between the two men and ended up in the man's room. Shortly thereafter, Masden joined in to help pull the man off his brother. During the scuffle, the man became unconscious, and appellee and his brother left the *Page 3 
unconscious man under the bed and closed his door. Concerned about the safety of the crew members, Masden told the other crew members, Jerry Keating and Chad Demory about the altercation and that they needed to pack up and leave the motel. While the crew members were packing, the roommate of the unconscious man called appellee at his room and asked about his roommate. Masden told him that he should go check up on his roommate as he was not in good condition. Moments later, Masden encountered the confrontational, knife-wielding roommate at the end of the walkway. When Charles Masden stepped out and saw the knife in the very angry roommate's hand, Charles charged toward the knife-wielding roommate and attempted to take the knife away from him. Appellee, Keating, and Demory joined to help disarm the roommate. During this second altercation, the unconscious man woke up and joined in the scuffle. At some point while Masden was attempting to pull his brother out of the man's room, Charles Masden was hit in the head with a beer bottle, and as Masden tried to throw the bottle back, he noticed he could not move his arm. He then went to his room to get his gun. Once the other two men saw Masden with the gun, both men ran off.
 {¶ 4} Police arrived at the motel, but made no charges against the four crew members, and they were all released. However, records indicate that the two unidentified men, one of whom was on parole, were put in jail. No crew member was disciplined or terminated as a result of this incident.
 {¶ 5} Appellee filed a claim with the Bureau of Worker's Compensation for the shoulder rotator cuff tear he sustained in the October 2005 incident. After a hearing on March 15, 2006, a district hearing officer found that Appellee did not sustain an injury "in *Page 4 
the course of" and "arising out of" employment. Appellee then appealed that determination, and a staff hearing officer confirmed the order. Appellee next appealed the decision to the Industrial Commission which refused the appeal. Appellee filed an appeal, challenging the denial of his worker's compensation claim, to the Montgomery County Court of Common Pleas. After Masden filed his complaint requesting participation in the fund, CCI answered and raised the defense that the court lacked jurisdiction pursuant to R.C. 4123.512. Before trial, the trial court overruled CCI's claim that it lacked jurisdiction to hear Masden's complaint. It found that Masden had entered into its contract of employment with CCI in Montgomery County. The matter proceeded to trial, and a jury verdict was returned in favor of Appellee, finding that Appellee was entitled to participate in the Worker's Compensation Fund. Appellant appeals from the trial court's judgment and asserted four assignments of error:
 I. "THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT FOR APPELLANT WHEN THE EVIDENCE WAS UNDISPUTED THAT APPELLEE'S INJURY LACKED THE REQUISITE NEXUS TO HIS EMPLOYMENT TO BE COMPENSABLE UNDER THE WORKER'S COMPENSATION ACT."
 II. "THE TRIAL COURT ERRED BY REFUSING TO PROPERLY INSTRUCT THE JURY ON OHIO LAW REGARDING WHEN AND WHETHER ASSAULTS BY THIRD PARTIES ARE COMPENSABLE UNDER THE WORKER'S COMPENSATION ACT." *Page 5 
 III. "THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO DISMISS OR CHANGE VENUE."
 IV. "THE JURY VERDICT IN FAVOR OF APPELLEE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I. {¶ 6} CCI asserts in its first assignment of error that the trial court committed reversible error in failing to direct a verdict for Appellant when the evidence was undisputed that Appellee's injury lacked the requisite nexus to his employment to be compensable. According to Civ. R. 50(A)(4), a motion for directed verdict is granted if, after construing the evidence most strongly in favor of the nonmoving party, "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." The "reasonable minds" test mandated by Civ. R. 50(A)(4) requires the court to discern only whether there exists any evidence of substantive probative value that favors the position of the nonmoving party. Civ. R. 50(A)(4);Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 69,23 O.O.3d 115, 430 N.E.2d 935.
 {¶ 7} To be compensable for an injury under Ohio Worker's Compensation Act, both prongs of the test in R.C. 4123.01(c) must be satisfied: the injury must have occurred both "in the course of" and "arising out of" the employment. R.C. 4123.01(c); Fisher v. Mayfield (1990), 49 Ohio St. 3d. 275, 277, 551 N.E.2d 1271. "An injury occurs in the course of and arises out of employment within the contemplation of the Ohio Worker's Compensation Act, if the injury followed as a natural incident of the work and *Page 6 
as a result of exposure occasioned by the nature, conditions or surrounding of the employment." Sebek v. Cleveland Graphite BronzeCo. (1947), 148 Ohio St. 693, 76 N.E. 892, at paragraph 2 of the syllabus, (overruled, in part, on other grounds, by Johnson v.Industrial Commission of Ohio (1955), 164 Ohio St. 297). Pursuant to R.C. 4123.95, the worker's compensation statutes must be liberally construed in favor of the employee. R.C. 4123.95.
1. "In the Course of"
 {¶ 8} As the Supreme Court of Ohio stated in Fisher, in analyzing the first requirement that an injury be sustained "in the course of" employment, the court must consider factors such as time, place, and circumstances of the injury to determine the existence of a nexus between the employment and injurious activity. 49 Ohio St.3d at 277. These factors, however, are not the ultimate object of a course-of-employment inquiry. Ruckman v. Cubby Drilling, Inc. (1998),81 Ohio St.3d 117, 120, 689 N.E.2d 91. The "in the course of" requirement limits the compensable injuries to those "occasioned in the course of the employment." Id. at 121. However, the employee need not necessarily be injured in the actual performance of work. Sebek, 148 Ohio St. at paragraph three of the syllabus. It is sufficient that the injury is sustained while the employee engages in an "activity that is consistent with the contract for hire and is logically related or is incidental to the employer's business." Sebek, 148 Ohio St. at paragraph three of the syllabus. "If the injuries are sustained [off premises], the employe[e] * * * must, at the time of his injury, have been engaged in the promotion of *Page 7 
his employer's business and in the furtherance of his affairs."Ruckman, 81 Ohio St.3d at 121, quoting Indus. Comm. v. Bateman (1933),126 Ohio St. 279, 185 N.E. 50.
 {¶ 9} Applying this standard liberally construed in favor of the employee, the Eighth Appellate District in Duncan v. Ohio Blow PipeCo. (1998), 130 Ohio App.3d 228, 719, N.E.2d 1029, held that the claimant's travel during his stay in a work site out of state was "in the course of employment." In Duncan, the employee was assigned to work at an out-of-state work site, and the employer paid for his meal, transportation and lodging during his stay. Id. at 237. The employee was injured on his way back to his hotel from a restaurant, which the court determined to be an injury "in the course of employment." Id. at 236. The court found that the critical factor was the fact that the employee was in California at the direction of his employer as a condition of the employer's contract with its customer, which was in furtherance of his employer's business. Id.
 {¶ 10} Ohio also recognizes the traveling employee doctrine.Pascarella v. ABX Air, Inc. (August 10, 1998), Clinton App. No. CA98-01-002, 1998 WL 468810 at *1. A traveling employee is one whose "work entails travel away from the employer's premises." Id., citing 2 Larson, Workers' Compensation Law (2004) 25-1 to 25-2, Section 25.01. The court in Pascarella held that a traveling employee is "within the course of their employment continuously during their trip, except when a distinct departure on a personal errand is shown." Id.
 {¶ 11} CCI contends that because the injury occurred while Masden was off duty and on a premise which the employer had no control over, and the fight had no relationship to the employment with CCI, Masden did not sustain his injury "in the *Page 8 
course" of his employment. In support of his argument, CCI citesKemper v. Daugherty (Feb. 11, 1982), Lorain App. No. 3125, 1982 WL 3853. While it is true that the employee in Kemper was staying at a motel paid for by his employer and was drinking, the Kemper case is distinguishable from the facts of our case. Id. at *1. The employee in Kemper was
heavily "intoxicated to the degree that his friends removed him bodily to his room so that he might sleep off the effects of the alcohol ingested." Id. However, Masden only had his routine drink after work and was not intoxicated to a point where he lost complete control over himself. Additionally, the fight did not originate from his drinking. Moreover, unlike the employer in Kemper who was free to choose any lodging facility and not mandated to stay at the particular lodging where he was assaulted and killed, Appellee was required to stay at the Best Inn in order to receive his lodging reimbursement. Id.
 {¶ 12} The nature of Masden's employment with CCI required him to be at different construction sites, therefore making Appellee a traveling employee. As a traveling employee, Masden would be in the course of his employment the entire time he was traveling except when he was on a personal errand. Moreover, Masden was not on a personal errand when he was injured as he was only trying to get the necessary rest he needed for the next workday and protect the safety of his crew members when the incident occurred. Rather, the injury sustained had its origin in a risk created by the necessity of sleeping away from home. As pointed out by the Eighth Appellate District in Duncan, 130 Ohio App.3d at 236, what is critical is that Masden was in Utica, Michigan at the direction of CCI in furtherance of CCI's business, and he had no choice but to live *Page 9 
in a lodging facility away from his own home. Accordingly, there is sufficient evidence showing the injury was sustained "in the course of employment."
2. "Arising out of"
 {¶ 13} "Whether there is a sufficient `causal connection' between an employee's injury and his employment to justify the right to participate in the Workers' Compensation Fund depends on the totality of the facts and circumstances surrounding the accident, including the (1) proximity of the scene of the accident to the place of employment; (2) the degree of control the employer had over the scene of the accident; and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." Lord v. Daugherty (1981), 66 Ohio St.2d 441,20 O.O.3d 376, 423 N.E.2d 96, syllabus. However, this test is not intended to be exhaustive. Fisher, 49 Ohio St.3d at 279, fn 2. Because workers' compensation cases are fact specific, no one test or analysis can apply to each and every factual possibility. Id. at 280. Accordingly, a flexible and analytically sound approach is preferable for hard and fast rules can lead to unsound and unfair results. Id.
 {¶ 14} If a claimant cannot satisfy the "arising out of" prong under the totality-of-the-circumstance test, the claimant is not foreclosed from recovery. There are alternate methods such as the "special hazard rule" to prove a causal connection and satisfy the requirement that injury arises out of employment. Luketic v. University Circle, Inc.
(1999), 134 Ohio App.3d 217, 223, 730 N.E.2d 1006. The special hazard rule is an exception to the coming-and-going rule that an employee with a fixed place of employment, injured while traveling to or from his place of employment, may not *Page 10 
participate in the Workers' Compensation fund for injuries sustained while commuting to and from a fixed situs because the requisite causal connection between the injury and the employment does not exist. MTD v.Robatin (1991), 61 Ohio St.3d 66, 68, 572 N.E.2d 661. In Ruckman v.Cubby Drilling, Inc. (1998), 81 Ohio St.3d 117, 689 N.E.2d 917, the Supreme Court determined that despite periodic relocation of job sites, each particular job site may constitute a fixed place of employment. The special hazard exception allows the employee to be compensated when the employment creates a special hazard and the employee's injury result from that hazard. Id. The special hazard rule applies where: (1) but for the employment, the employee would not have been at the location where the injury occurred, and (2) the risk is distinctive in nature or quantitatively greater than the risk common to the public. Id., citingLittlefield v. Pillsbury (1983), 6 Ohio St.3d 389, 6 OBR 439,453 N.E.2d 570.
 {¶ 15} In Duncan, 130 Ohio App.3d at 236-237, Judge McMonagle wrote as follows:
 {¶ 16} "Applying these factors to the instant case does not support a causal connection between appellant's injury and his employment with OBP. The accident occurred anywhere from five to six miles from the plant site on a highway over which OBP had no control. Although a semantic argument to the contrary can be made, an equally plausible argument can be made that OBP did not derive any benefit from appellant's presence at the scene of the accident. Nonetheless, theRuckman court found that the inability to satisfy the Lord test did not foreclose recovery if the injured employee could demonstrate that the employment relationship exposed the employee to a risk quantitatively greater than the risks common to the public. Known as the `special *Page 11 
hazard rule,' this rule has a purpose similar to that of the coming-and-going rule. Ruckman at 123, 689 N.E.2d at 922-923. TheRuckman court found the required causal connection, as the riggers were required to undertake lengthy commutes, thereby significantly increasing their exposure to traffic risks unlike that of the general public.
 {¶ 17} "The same can be said of appellant in this case. Appellant, at the direction of his employer, traveled to an employment assignment in another state and stayed in a hotel for the duration of the assignment. OBP assumed that appellant would need to eat while there and provided not only a meal allowance for that purpose but also transportation.As a consequence, appellant's exposure to the risks associated withtravel were quantitatively greater than that of the general public, who,most likely, would not be traveling to a restaurant for each of itsdaily meals. Since appellant's injuries were caused by a hazard of his employment, it necessarily follows that his injuries arose out of his employment." (Emphasis added.)
 {¶ 18} Applying the three factors of the totality of circumstances test does support a causal connection between Masden's injury and his employment with CCI. First, Best Inn, the place of the incident, was in a convenient location within 10-15 minutes driving distance from the work site, a proximate distance from the work site. Second, although CCI did not have direct control over the ownership or management of the motel, CCI selected and paid for this particular motel among other lodging facilities in the Utica area and required Masden to be in Michigan for the Sam's Club project. Finally, the employer received a benefit by having Masden present at the scene of the accident. The records support that Dave Morris, the supervisory person at CCI, told Masden that he could be reimbursed for lodging only if he stayed at the Best Inn due to CCI's losing money on *Page 12 
the Sam's Club project. Accordingly, Masden did not have much of a choice but to stay at this inexpensive lodging facility. Having Masden and his crew stay at the cheaper motel chosen by CCI was a benefit to CCI. Therefore, the totality of the circumstances demonstrates that the injury "arose out of" employment.
 {¶ 19} CCI contends that the special hazard rule should not apply to the facts of this case because this rule is confined only to traffic injuries. We disagree with this argument. The Eighth Appellate District applied the special hazard rule to compensate for injuries sustained not in a traffic accident but while a university police officer was apprehending a felon during off duty hours out of his jurisdiction.Luketic v. University Circle, Inc. (1999), 134 Ohio App.3d 217,730 N.E.2d 1006. Likewise, the Fifth Appellate District has extended the special hazard doctrine beyond injuries sustained in traffic accidents.Knox v. Ohio Bur. of Emp. Services (1998), 125 Ohio App.3d 313,708 N.E.2d 298. The employee in Knox was sent to a seminar out of town and sustained an injury when he slipped and fell in the shower of his hotel room. Id. at 316-317. The employee argued that the special hazard rule applied to his case since he attended the seminar at the direction of his employer; he was in transit when he sustained his injury; and the hazard of travel was greater for a person with his disability than for the general public. Id. at 320. The court held that there was some evidence in the record from which the jury could determine that the special hazard rule applied. Id.
 {¶ 20} In applying the special hazard rule, Masden would not have been lodging at the Best Inn in Michigan at the time of the incident, but for his employment with CCI, thus satisfying the first prong of the test. Moreover, staying at an inexpensive motel presents a greater risk of being assaulted. Other jurisdictions have held that staying at a *Page 13 
motel has an increased risk than that of the general public: "[t]he hazard to which plaintiff in this case was exposed, assault and robbery, was not something to which he would have been equally exposed apart from his employment-required travel, that necessitated plaintiff's stay in an inexpensive motel located in unfamiliar surroundings." Ramsey v. S.Indus. Constructors Inc. (2006), 178 N.C.App. 25, 39, 630 S.E.2d 681. See also Ark. Dept. of Health v. Huntley (1984), 12 Ark.App. 287, 675
S.W.2d 845; Jean Barnes Collections v. Elston (Fla.App. 1982),413 So.2d 797. Being interrupted while sleeping at night and then being assaulted at an inexpensive motel was a risk peculiar to traveling, and Masden's exposure to the risks associated with travel were quantitatively greater than that of the general public who most likely would not be constantly required to stay at a particular motel for a long term duration. As both prongs of the special hazard rule are satisfied, there is sufficient showing that Masden's injury arose out of his employment with CCI.
 {¶ 21} Because we find substantial competent evidence that Appellant's injuries occurred "in the course of" and "arising out of "his employment with CCI, the trial court did not err in failing to direct a verdict for Appellant. Accordingly, the first assignment of error is overruled.
 II. {¶ 22} CCI asserts in its second assignment of error that the trial court committed reversible error in refusing to instruct the jury on Ohio law regarding when and whether assaults by third parties are compensable under the Worker's Compensation Act. To show reversible error in the trial court's refusal to give a proposed instruction, the *Page 14 
proponent of error must satisfy a two-prong test. Jaworowski v. Med.Radiation Consultants (1991), 71 Ohio App.3d 320, 327, 594 N.E.2d 9. First, he must show that the trial court's refusal to give a proposed instruction was an abuse of discretion, in other words, that the refusal was arbitrary, unreasonable, or unconscionable. Id. Second, the proponent must demonstrate that he was prejudiced by the court's refusal to give the proposed instruction. Id. A party is prejudiced when the refusal to adopt a proposed jury instruction "cripples the entire jury charge." Id. at 328.
 {¶ 23} "The general rule is that no compensation is recoverable under the Workmen's Compensation Acts for injuries sustained through horseplay or fooling which was done independently of, and disconnected from, the performance of any duty of the employment, since such injuries do not arise out of the employment within the meaning of the acts." Indus.Comm. of Ohio v. Bankes (1934), 127 Ohio St. 517, 522, 189 N.E. 437. "Exceptions to the general rule arise where the employee, who is injured through horseplay or fooling by other employees, took no part in the fooling, but was attending to his duties or where he is injured by horseplay commonly carried on by the employees with the knowledge and consent or acquiescence of the employer." Id. The same rule also applies to fighting. See Stivinson v. Goodyear Tire Rubber Co. (1997),80 Ohio St. 3d 498, 687 N.E.2d 458.
 {¶ 24} While it is true that a fight was involved in this case, a mere fight does not automatically invite the application of the general rule that injuries sustained in a fight are not compensable. The records indicate that the "fight" was initiated not out of purely private and personal reasons but only arose as a chain of events when Charles Masden told another lodger to take his argument to another place so that he and his brother *Page 15 
could get the necessary rest for their next workday. Because workers' compensation claims are fact specific, instructing the jury on the fighting is likely to confuse the jurors, especially when the general fighting rule does not completely fit to the particular facts of our case.
 {¶ 25} Appellant also contends that the trial court erroneously dispensed of the causal relationship requirement when the instruction used the word, "encountered." However, the wording of the jury instruction was sufficient to inform the jury of the proper parameter of the special hazard exception to the coming-and-going rule. We find that the trial court did not abuse its discretion in refusing to adopt the proposed jury instruction. Accordingly, the second assignment of error is overruled.
 III. {¶ 26} By his third assignment of error, Appellant contends that the trial court erred by denying Appellant's motion to dismiss or change venue. Pursuant to R.C. 4123.512(A), the "county of filing" requirement is a venue provision. Venue is not jurisdictional. See Loftus v.Pennsylvania RR. Co. (1923), 107 Ohio St. 352, 356-357, 140 N.E. 94. Moreover, there is no showing that Appellant was prejudiced by the denial of his motion for improper venue. Accordingly, the third assignment of error is overruled.
 IV. *Page 16 {¶ 27} By his fourth assignment of error, Appellant contends that the jury verdict in favor of Appellee is against the manifest weight of the evidence. If the trial court's decision is supported by some competent and credible evidence going to all the essential elements of the claim, a reviewing court will not reverse the decision as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. We find that there are sufficient facts in the record to support the claim of Masden to participate in the fund, and accordingly, the fourth assignment of error is overruled.
 {¶ 28} The judgment of the trial court is affirmed.
i. . . . . . . . . . . . . .
 WOLFF, P.J., and DONOVAN, J., concur. *Page 1