OPINION
{¶ 1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.
 {¶ 2} Plaintiff-Appellant Lucretia D. Callahan ("Callahan") appeals from the March 11, 2008 Judgment Entry of the Court of Common Pleas, Allen County, Ohio granting summary judgment in favor of The Proctor and Gamble Co. ("PG").[1]
 {¶ 3} Callahan is employed by PG as a packing department safety leader. On September 13, 2004 Callahan and other employees traveled to New Orleans to attend a national conference on safety. Callahan testified that at this *Page 3 
conference, training was available, safety seminars were available, and a trade show was also part of the conference.
 {¶ 4} As part of the trade show, employees were invited to attend receptions, hosted by various vendors, after the conference schedule ended for the day. Specifically, on the evening of September 13, 2004 Callahan and the other PG employees were invited to attend two receptions. After the second reception, hosted by a company named Moldex, a Moldex representative apparently told the PG employees that he would be on Bourbon Street later and that if they all met up he would purchase drinks for them.
 {¶ 5} A number of PG employees did go to Bourbon Street and eventually, several PG employees went into a bar, Club Utopia, and several remained outside to look for the Moldex representative, Michael. When the Moldex representative showed up, all of the PG employees went into Club Utopia and were purchased drinks by the Moldex representative.
 {¶ 6} The group soon left Club Utopia and the PG employees parted ways with the Moldex representative. After parting ways, the PG employees started walking toward their car, stopping outside another club to try to identify a song they recognized and listening to music being played inside the club. While standing outside this club, Callahan was run into by a man who worked as a *Page 4 
bouncer for Club Utopia. Apparently, the bouncer was chasing someone and ran directly into Callahan, resulting in leg injuries.[2]
 {¶ 7} Callahan filed a claim for workers' compensation, claim number 04-894612 SI. Callahan's claim was apparently heard before a District Hearing Officer who first denied the claim. It appears that Callahan appealed from the order of the District Hearing Officer, appealing the claim to a Staff Hearing Officer, who also denied the claim on June 11, 2007. We surmise from the record, that after Callahan's claim was denied by the Staff Hearing Officer, she filed a claim with the Industrial Commission of Ohio which was denied on approximately June 30, 2007.
 {¶ 8} It is from this order, denying her appeal, that on August 15, 2007 Callahan filed an appeal in the Court of Common Pleas of Allen County, Ohio. PG answered the complaint on September 14, 2007.
 {¶ 9} On January 31, 2008 PG filed a motion for summary judgment arguing, mainly, that Callahan's injury did not occur within the scope of her employment. On March 5, 2008 Callahan responded to the motion for summary judgment. *Page 5 
 {¶ 10} The trial court granted PG's motion for summary judgment on March 11, 2008, finding that:
 In the instant case, it is not disputed that plaintiff was within the course of her employment, at least for workers' compensation purposes, when she participated in the New Orleans' training conference. When the evidence is viewed in a light most favorable to plaintiff, a reasonable mind might conclude that she was still within the course of her employment, for workers' compensation purposes, when she went to the after-conference receptions because defendant may have gotten a benefit from her presence at the receptions and plaintiff could arguably be said to have been engaged in a pursuit or undertaking consistent with her contract of hire and which in some logical manner pertained to or was incidental to her employment at the receptions.
 * * *
 In the instant case, defendant has pointed to evidence, i.e. plaintiff's stopping outside another bar to listen to a song, which put her in the position to get run over, that shows there is no genuine issue of material fact regarding whether plaintiff's injury is compensable. On the other hand, plaintiff has not pointed to evidence that creates a genuine issue as to whether, at the time of the collision with the bouncer, she was or was not on a purely personal mission of her own, having nothing to do with her employer's purposes, and was therefore, outside the course of her employment.
(Internal citations omitted).
 {¶ 11} Callahan now appeals asserting a single assignment of error.
 ASSIGNMENT OF ERROR THE TRIAL COURT COMMITTED PREJUDICIAL ERROR ON GRANTING THE MOTION OF DEFENDANT-APPELLEE, SPEEDWAY/SUPERAMERICA [SIC], FOR *Page 6 SUMMARY JUDGMENT AS THERE WAS A GENUINE ISSUE OF MATERIAL FACT AND DEFENDANT WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.
 {¶ 12} As an initial matter, we note that the assignment of error in the present case references Speedway/Superamerica. Callahan has failed to provide this Court with specific assignments of error as mandated by App. R. 16(A)(3) that assign error involving the summary judgment granted in favor of PG. Specifically, App. R. 16(A)(3) provides that an appellant must provide "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected."
 {¶ 13} Instead, Callahan provided an assignment of error referencing a company that was never a party to the present case and, in fact, presented no assignment of error referencing the judgment in favor of PG. App. R. 12(A)(2) provides that "[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App. R. 16(A)."
 {¶ 14} Accordingly, we are not required to address issues not specifically assigned as error and briefed. Therefore, based on this deficiency alone, given that the only assignment of error raised, raises no issues as to Defendant-Appellee PG, this Court is not required to address any arguments raised in this appeal. *Page 7 
See Headings v. Ranco, Inc., 3rd Dist. No. 14-04-33,2005-Ohio-1095. However, in the interest of justice, we will address what we assume to be Callahan's argument that the trial court erred in granting summary judgment in favor of PG.
 {¶ 15} An appellate court reviews a grant of summary judgment independently, and without any deference to the trial court.Conley-Slowinski v. Superior Spinning Stamping Co. (1998),128 Ohio App.3d 360, 363, 714 N.E.2d 991. The standard of review for a grant of summary judgment is de novo. Hasenfratz v. Warnement 3rd Dist. No. 1-06-03, 2006-Ohio-2797 citing Lorain Nat'l. Bank v. Saratoga Apts.
(1989), 61 Ohio App.3d 127, 572 N.E.2d 198.
 {¶ 16} A grant of summary judgment will be affirmed only when the requirements of Civ. R. 56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ. R. 56(C); see Horton v. Harwich Chem. Corp. (1995), 73 Ohio St.3d 679,653 N.E.2d 1196, 1995-Ohio-286, paragraph three of the syllabus. Additionally, Civ. R. 56(C) mandates that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact show that there is no genuine issue as *Page 8 
to any material fact and that the moving party is entitled to judgment as a matter of law.
 {¶ 17} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 116, 526 N.E.2d 798. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. Dresher v. Burt (1996),75 Ohio St.3d 280, 292, 662 N.E.2d 264, 1996-Ohio-107. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. See Civ. R. 56(E).
 {¶ 18} In ruling on a summary judgment motion, a court is not permitted to weigh evidence or choose among reasonable inferences, rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party. Jacobs v. Racevskis (1995), 105 Ohio App.3d 1, 7,663 N.E.2d 653.
 {¶ 19} In arguing that summary judgment was inappropriate, we note that Callahan argues that she was within the scope of her employment when the injury occurred. Specifically, Callahan argues that because Moldex sells products that *Page 9 
could be used by PG, she was at Club Utopia on behalf of PG and therefore, still within the scope of her employment.
 {¶ 20} There is no doubt that at the time of the injury, Callahan was an employee of PG. However, "[a]n injury sustained by an employee is compensable under the Workers' Compensation Act only if it was `received in the course of, and arising out of, the injured employee's employment.'" Fisher v. Mayfield (1990), 49 Ohio St.3d 275, 276,551 N.E.2d 1271 quoting R.C. 4123.01(C); R.C. 4123.54. See also Brown v.Upper Sandusky Schools (2000), 139 Ohio App.3d 448, 744 N.E.2d 236,2000-Ohio-1894. Moreover, in Fisher, the court recognized "the conjunctive nature of the coverage formula of "in the course of and arising out of the employment. Therefore, all elements of the formula must be met before compensation will be allowed." Fisher,49 Ohio St.3d at 277.
 {¶ 21} In Fisher, the court explained the "`arising out of element by considering the "totality of the circumstances" test for determining whether a causal connection existed between an employee's injury and his employment." Id. The court further went on to adopt the following three factor test for determining whether there is a causal connection between and employee's injury and their employment, sufficient to justify participation in the workers compensation: "(1) the proximity of the scene of the accident to the place of employment, (2) the *Page 10 
degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." Id citing Lord v. Daugherty
(1981), 66 Ohio St.2d 441, 423 N.E.2d 96. However, the Fisher Court noted that because workers' compensation cases are fact specific, no one test or analysis can apply to each and every factual possibility, necessitating a more flexible approach to evaluating workers' compensation cases. Fisher, 49 Ohio St.3d at 280.
 {¶ 22} An injury is compensable, as part of the course of employment, if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business. Ruckman v. Cubby Drilling,Inc., 81 Ohio St.3d 117, 689 N.E.2d 917, 1998-Ohio-455, citingKohlmayer v. Keller (1970), 24 Ohio St.2d 10, 12, 263 N.E.2d 231, 233. The Fisher court concluded that in the "course of employment" would associate with the "time, place and circumstances of the injury," such that there must be a sufficient nexus between the employment and the injurious activity. Id. See, also, Masden v. CCI Supply, Inc., 2nd Dist. No. 22304, 2008-Ohio-4396.
 {¶ 23} In the case at bar, there is no dispute that Callahan was in New Orleans as an employee of PG. On September 13, 2004 Callahan was attending a national safety conference in her capacity as a packing department safety leader, *Page 11 
along with several other employees from PG. Callahan was in attendance at the safety conference on September 13, 2004, although the conference was concluded early due to the impending arrival of Hurricane Ivan.
 {¶ 24} During the conference, the employees of PG were invited to receptions which were being held by a number of vendors. After the conference ended on September 13, 2004, the employees of PG, including Callahan went to two receptions, both held at restaurants. It appears from Callahan's testimony that these receptions were not a formal part of the conference, but were held by companies who had exhibited at the trade show which was part of the convention. The second reception was hosted by Moldex.
 {¶ 25} After the second reception, a representative of Moldex invited the PG employees to meet up with him later somewhere on Bourbon Street. It appears that the agreement between the PG employees and the Moldex representative involved both parties going to Bourbon Street, where they would eventually meet up. We note that one of the PG employees attending the conference opted not to go to Bourbon Street.
 {¶ 26} Once the remaining PG employees went down to Bourbon Street, they stopped outside a club playing music they enjoyed, Club Utopia. Callahan and several co-workers went into the club while several employees stayed outside. While the employees were standing outside, the Moldex representative arrived and *Page 12 
proceeded to purchase drinks at Club Utopia for the PG employees. Callahan stated that she did not drink at Club Utopia.
 {¶ 27} The PG employees then left Club Utopia, as did the Moldex representative who went in the opposite direction to get to his vehicle. The PG employees began walking to their cars when they stopped outside a club to listen to a song being played inside another bar. Instead of entering the bar, the PG employees lingered outside.
 {¶ 28} As Callahan was standing outside the bar, a bouncer from Club Utopia ran toward her, chasing someone who he suspected was a thief. The bouncer ran into Callahan, knocking her down and causing the injuries that are the basis of her workers' compensation claim. We note that we were not provided with extensive details of these injuries.
 {¶ 29} Where employees are traveling out of town for the benefit of the employer, courts have utilized a traveling employee doctrine, which creates an exception to the typical rule that employees cannot be compensated for injuries that occur while they are traveling to and from their employment. See Freeman v. Brooks, 154 Ohio App. 3d 371,797 N.E.2d 520, 2003-Ohio-4814; Ruckman, 81 Ohio St.3d 117. However, courts have declined to extend the traveling employee doctrine to all injuries occurring while an employee is traveling to benefit the employer.Budd v. Trimble (December 22, 1994), 10th Dist. No. 94APE04-589. *Page 13 
Where an employee is on a purely personal mission, the traveling employee doctrine will not extend workers' compensation coverage to injury that occurs on that mission. Id.
 {¶ 30} In applying the traveling employee doctrine, other courts have held that where the scene of the action was removed from the place of employment and the employer received no cognizable benefit from an employee's presence at the scene of an injury, the three part "arising out of test as articulated in Lord and Fisher cannot be satisfiedCline v. Yellow Transportation, Inc., 10th Dist. No. 07AP498, 2007-Ohio-6782. In Cline, the employee was staying in a hotel while on business for the benefit of the employer. While crossing the street, going from the hotel to a restaurant, Cline was struck by a car. The Cline Court held that although Cline was traveling for business, he was, at the time of the accident, on a purely personal mission of his own.
 {¶ 31} This Court considered a similar set of circumstances inElsass v. Commercial Carriers, Inc. (1992), 73 Ohio App.3d 112,596 N.E.2d 599. In Elsass, a commercial truck driver, who was on break from his driving, hired a cab to take him into Washington D.C., where he went in to get dinner. He was subsequently injured. In considering whether getting dinner was within the scope of Elsass' employment, this Court considered that, the fact that he was off duty for the day was not dispositive of whether his injury was compensable under the *Page 14 
workers' compensation system. Elsass, 73 Ohio App.3d 112, 115. Instead, this Court utilized the factors articulated in Lord and determined that the scene of the accident was too far removed in time, space, and purpose from Elsass' employment, which ended in Alexandria, VA.Id. This Court also relied on Elsass' employer's lack of control over his actions that evening. Id. The employer did not require Elsass to go into Washington D.C., and had no control over his actions while in the city. Id.
 {¶ 32} In the present case, the convention had ended for the day. Callahan had attended two receptions earlier in the evening before receiving the invitation from the Moldex representative to go meet on Bourbon Street. It is unclear from the record whether the PG employees were planning to go to Bourbon Street before the invitation was received. However, the PG employees left the reception before the Moldex representative, went down to Bourbon Street, and walked around Bourbon Street.
 {¶ 33} The PG employees' purpose in going down to Bourbon Street appeared to be because the Moldex representative had offered to purchase them drinks. Moreover, the employees went into Club Utopia, not because they were meeting to discuss business, but because they enjoyed the music being played in the club. Club Utopia was not a pre-selected meeting place, but just happened to *Page 15 
be where the employees and the Moldex representative met up while walking around Bourbon Street.
 {¶ 34} Although Callahan contends that business was discussed at Club Utopia, the discussion of business, at any given location, is not enough to satisfy the Lord test, such that we could find the trip to Bourbon Street was arising out of Callahan's employment. The scene of the accident was well outside of the control of PG or even the conference organizers. Moreover, there was but a tenuous relationship between the trip to Bourbon Street and PG's interests. In sum, under the totality of the circumstances, the fact that business may have been briefly discussed at Club Utopia does not give rise to any genuine issue as to whether the PG employees, who were receiving drinks from the Moldex representative, were within the scope of their employment for the benefit of PG.
 {¶ 35} As a result, we find that the trial court did not err in granting summary judgment in favor of PG. Accordingly, Callahan's sole assignment of error is overruled. Based on the foregoing, the March 11, 2008 Judgment Entry of the Court of Common Pleas, Allen County, Ohio granting summary judgment in favor of PG is affirmed.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur.
[1] We note that the Ohio Bureau of Workers' Compensation is also listed as an Appellee in this case. However, they did not participate in this appeal.
[2] It is unclear from the record before this Court exactly what injuries Callahan sustained. We did not receive the documentary evidence presented to the Industrial Commission or the decisions of the Industrial Commission. This Court has before it two transcripts of hearings before the Industrial Commission, in which injuries were not discussed with any specificity, and the record on appeal to the Court of Common Pleas. That record does not include the decisions of the District Hearing Officer or the Staff Hearing Officer, or the denial of her appeal to the Industrial Commission of Ohio. *Page 1