OPINION
{¶ 1} Plaintiff-appellant, Craig D. Griffith ("Griffith"), appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, City of Miamisburg ("appellee"), and denying Griffith's own motion for summary judgment concerning his entitlement to workers' compensation benefits. For the following reasons, we reverse the trial court's judgment. *Page 2 
 {¶ 2} On May 8, 2006, Griffith, who was employed by appellee as a police officer, was attending a two-week motor vehicle accident investigation training course at the Ohio Highway Patrol training academy ("academy") in Columbus, Ohio. Appellee approved Griffith's attendance at the training, provided a car for his travel to and from the academy, paid Griffith his normal wages during the training period, and strongly suggested that Griffith remain at the academy throughout the duration of the training session. Timothy Hunsaker, a Miamisburg police officer who serves as appellee's training officer, testified that staying at the academy aids in successful completion of the training program. The highway patrol similarly encourages trainees to remain at the academy because it provides trainees with better resources to complete required, out-of-class activities. Appellee would not pay for Griffith's lodging or meals anywhere other than at the academy.
 {¶ 3} The training course consisted of daily, formal training activities from 8:00 a.m. to 5:00 p.m., followed by dinner until 6:00 p.m. Although trainees were required to complete "homework" before the following day's classes, the period from 6:00 p.m. until 8:00 a.m. was otherwise the trainees' "own time." (Griffith Depo. 41.) After dinner on May 8, 2006, Griffith returned to his room, read some coursework, and walked down to the academy's workout facilities, which included a gymnasium with three basketball courts, a track, rooms with fitness equipment and free weights, and a swimming pool. After lifting weights for approximately 45 minutes, Griffith joined a basketball game. *Page 3 
While playing basketball, Griffith stepped on the jacket of a discarded taser cartridge, [1] twisted his right knee, and sustained a right knee patellar tendon rupture.
 {¶ 4} Griffith filed an application for workers' compensation benefits for his injury. A district hearing officer denied Griffith's claim in an order dated July 5, 2006, but, on appeal, a staff hearing officer allowed the claim in an order dated September 1, 2006. After the Industrial Commission refused further review, appellee filed a notice of appeal in the Montgomery County Court of Common Pleas. Pursuant to R.C. 4123.512(D), Griffith filed a petition in that court alleging his entitlement to participate in the workers' compensation system. In accordance with an agreed entry filed September 11, 2007, the Montgomery County court transferred this action to the Franklin County Court of Common Pleas, where both Griffith and appellee filed motions for summary judgment. On June 24, 2008, the trial court denied Griffith's motion for summary judgment and granted appellee's motion for summary judgment, concluding that Griffith's injury did not occur in the course of and arising out of his employment, as required for participation in the workers' compensation fund. The trial court filed its final judgment entry on July 8, 2008, and Griffith appealed.
 {¶ 5} Griffith asserts the following two assignments of error:
 1. The trial court erred when it granted summary judgment in favor of [appellee] on [Griffith's] claim for the right to participate in the Ohio Workers' Compensation Fund for a right patellar tendon tear.
 2. The trial court erred when it denied * * * Griffith's motion for summary judgment. *Page 4 
The sole issue presented, both in the trial court and on appeal, is whether Griffith is entitled to participate in the workers' compensation fund for the injury he sustained on May 8, 2006. Both of Griffith's assignments of error address this issue with interrelated arguments, and we address the assignments of error together.
 {¶ 6} We review a summary judgment de novo. Koos v. Cent. OhioCellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107; Brown at 711. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. Coventry Twp.v. Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 7} Pursuant to Civ. R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. *Page 5 
 {¶ 8} For purposes of the Ohio workers' compensation statutes, "`[i]njury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). Thus, to be compensable under the workers' compensation fund, an employee's injury must be received in the course of, and arising out of, his or her employment. Id.; Bralley v. Daugherty (1980),61 Ohio St.2d 302, 303. The Ohio Supreme Court has expressly recognized "the conjunctive nature of the coverage formula of `in the course of and arising out of the employment." Fisher v. Mayfield (1990),49 Ohio St.3d 275, 277. In applying the statutory requirements, we remain mindful that the workers' compensation statutes should be liberally construed in favor of employees. R.C. 4123.95.
 {¶ 9} The statutory requirement that an injury be in the course of employment relates to the time, place, and circumstances of the injury.Fisher at 277. An employee need not necessarily be injured in the actual performance of work for the employer. Rather, an injury is in the course of employment if sustained while the employee was engaged in activity that is consistent with the employee's contract of hire and that is logically related to the employer's business or incidental to the employment. Ruckman v. Cubby Drilling, Inc., 81 Ohio St.3d 117, 120,1998-Ohio-455, citing Kohlmayer v. Keller (1970), 24 Ohio St.2d 10, 12;Fisher at 278, fn. 1, citing Sebek v. Cleveland Graphite Bronze Co.
(1947), 148 Ohio St. 693, paragraph 13 of the syllabus. Ordinarily, the issue of whether an employee is acting within the course of employment is a question of fact. Saunders v. Holzer Hosp. Found.,176 Ohio App.3d 275, 2008-Ohio-1032, ¶ 15, citing Osborne v. Lyles (1992),63 Ohio St.3d 326, 334. However, where, as *Page 6 
here, the facts are undisputed and no competing inferences are possible, it becomes a question of law. Id. at 330.
 {¶ 10} The statutory requirement that an injury arise out of employment refers to a causal connection between the employment and the injury. Id. Courts determine whether an employee's injury arose out of his or her employment from the totality of the circumstances, including the factors set forth in Lord v. Daugherty (1981), 66 Ohio St.2d 441.Fisher at 278-279. Those factors include the following: "(1) the proximity of the scene of the accident to the place of employment; (2) the degree of control the employer had over the scene of the accident; and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." Lord at 444. The factors listed in Lord are not exhaustive. They are merely illustrative of the facts to be considered under the totality of the circumstances. Fisher at 279, fn. 2. Because workers' compensation cases are fact specific, a flexible and analytically sound approach is preferable to hard and fast rules, which can lead to unsound and unfair results. Id. at 279.
 {¶ 11} The trial court's analysis focused primarily on application of the three Lord factors. Ultimately, the court determined that Griffith failed to meet any of the three enumerated factors and that, "[a]s such, there [was] no real reason for the Court to look to any other factors." Nevertheless, the court went on to reject Griffith's arguments that his injury was caused by a special hazard of his employment and that he was within the course of his employment, as a traveling employee, at the time of his injury. Concluding as a matter of law that Griffith was not injured in the course of and arising out of his *Page 7 
employment, the trial court determined that Griffith's injury was not compensable and entered judgment in favor of appellee.
 {¶ 12} Despite the trial court's primary reliance on the Lord factors, which concern the determination of whether a claimant's injuries arose out of his or her employment, i.e., whether a causal connection exists between the injury and employment, we first address whether Griffith sustained his injury in the course of his employment. An injury is in the course of employment if sustained in activity consistent with the employee's contract of hire and logically related to the employer's business or incidental to the employment. Ruckman at 120, citingKohlmayer at 12; Fisher at 278, fn. 1. This determination requires consideration of the time, place, and circumstances of the injury. Id. at 277.
 {¶ 13} In his motion for summary judgment, Griffith argued that his injury occurred in the course of his employment because he was a traveling employee at the time of his injury. The Twelfth District Court of Appeals described the "traveling employee" doctrine in Pascarella v.ABX Air, Inc. (Aug. 10, 1998), Clinton App. No. CA98-01-002, quoting 2 Larson, Workers' Compensation Law, Section 25.00, 5-286 (1997), stating that "`[e]mployees whose work entails travel away from the employer's premises are * * * within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown.'" This court, however, has rejected the proposition that an employee on a business trip is necessarily in the course of employment during his or her entire time away, stating that an employee on a business trip "does not have a special status for the purpose of coverage under the Ohio Workers' Compensation Law" and that entitlement to benefits should be *Page 8 
determined under the Fisher standard, requiring consideration of the time, place, and circumstances of the injury. Budd v. Trimble (Dec. 22, 1994), Franklin App. No. 94APE04-589. This court more recently clarified that it has refused to adopt the traveling-employee doctrine as a means to find injuries compensable where the injuries occurred during an employment-related trip, but while the employee was engaged in a purely personal mission or errand. Cline v. Yellow Transp., Inc., Franklin App. No. 07AP-498, 2007-Ohio-6782, ¶ 18. See, also, Lippolt v. Hague, Franklin App. No. 08AP-140, 2008-Ohio-5070. This view is in line with the view of several other Ohio appellate districts. See Roop v. CentreSupermarkets, Inc. (Apr. 24, 1987), Lucas App. No. L-86-206; Marbury v.Indus. Comm. (1989), 62 Ohio App.3d 786; Elsass v. Commercial Carriers,Inc. (1992), 73 Ohio App.3d 112.
 {¶ 14} Griffith was undisputedly a traveling employee at the time of his injury. His presence at the academy was intricately entwined with his employment as a Miamisburg police officer and benefited appellee by enhancing Griffith's ability to perform his job duties and enhancing appellee's ability to investigate serious automobile accidents independent of the highway patrol. Appellee authorized Griffith's attendance at the training, paid him his regular wages during the training, and provided him with a car to travel to and from the academy, where appellee strongly encouraged Griffith to remain for the duration of the training course. The trial court seemingly agreed that Griffith was a traveling employee but, in exclusive reliance on Cline, found that Griffith was engaged in purely personal activity at the time of his injury and was, therefore, outside the course of his employment. Like the trial court, appellee maintains that Griffith was on a personal errand when he was injured. We thus consider whether *Page 9 
Griffith's participation in a basketball game at the academy after the conclusion of the day's scheduled activities constituted a purely personal errand, outside the course of his employment.
 {¶ 15} In Cline, on which the trial court relied to conclude that Griffith was not injured in the course of his employment, this court applied the personal errand exception to the traveling-employee doctrine. In that case, a truck driver filed a workers' compensation claim for injuries sustained when he was hit by an automobile while walking from his hotel to a restaurant during an unpaid, federally mandated, ten-hour rest period between long distance runs. During his rest period, the driver checked into a hotel, paid for by his employer, and slept for seven and a half hours before setting out on foot to a restaurant across the street. During rest periods, drivers were not permitted to drive to a restaurant if there was one within walking distance from the driver's hotel. Stating that the traveling-employee doctrine does not make injuries incurred during a personal mission compensable, this court analogized the driver's activity inCline to activity deemed purely personal in Elsass and Richardson v.Conrad, Franklin App. No. 03AP-913, 2004-Ohio-1340. Ultimately, we found the driver's dinner trip akin to a personal errand that did not benefit his employer or further its business and, therefore, concluded that the driver's injuries did not occur in the course of his employment.
 {¶ 16} In contrast, we find the circumstances surrounding Griffith's injury distinguishable from the personal errands in Elsass andRichardson, both of which involved injuries sustained while the claimants were traveling between their lodgings and remote establishments for dinner and entertainment not paid for by their employers. In Elsass, the claimant and two other truck drivers on a rest period between runs drank *Page 10 
several beers at their motel in Alexandria, Virginia, and then called a taxicab to transport them into Washington, D.C. to a restaurant with topless waitresses or nude dancing. The court found no error in the determination that the claimant's injury, sustained when the taxicab was involved in an automobile accident, did not occur in the course of the claimant's employment. The Elsass court did not discuss the traveling-employee doctrine but, instead, applied the Lord analysis and stated, "whether [the claimant] truly sought food, `action,' or both, under these circumstances, he did so at his own peril. For in either instance, [the employer] received no benefit from [the claimant's] presence in Washington D.C. at 12:30 a.m." Elsass at 115.
 {¶ 17} In Richardson, the claimant, a resident of Dayton, Ohio, was assigned by his employer to a construction project in Columbus. While the employer paid for the claimant's motel accommodations, it did not provide him with a car, reimburse him for mileage or pay for his meals. The claimant was injured in an automobile accident while returning to his motel from a restaurant ten miles away, where he and another employee watched a basketball game and ate dinner. Like inElsass, this court did not expressly discuss the traveling-employee doctrine. However, the court noted that the claimant's use of a hotel in Columbus, only one to two hours from his home, was as much for his own convenience and benefit as for his employer's. The court also noted that the employer did not pay for the claimant's meals or have any control over the claimant's nightly arrangements and that the claimant's travel to and from the restaurant did not benefit the employer. Accordingly, the court concluded that the claimant was not entitled to participate in the workers' compensation fund. *Page 11 
 {¶ 18} Other cases denying participation in the workers' compensation fund for injuries sustained during a business trip similarly involve travel away from the claimant's employment premises or employer-authorized lodging. See, e.g., Callahan v. Proctor GambleCo., Allen App. No. 1-08-19, 2008-Ohio-4954 (employee in New Orleans for a national safety conference attended two post-conference receptions and then traveled with other employees to Bourbon Street, where she was injured when a bouncer knocked her down); Roop (claimant's decedent killed while walking back to hotel from a nightclub that he visited after the conclusion of the convention schedule, which ran from 7:00 a.m. until 11:00 or 11:30 p.m., and included breakfast, lunch, dinner, and a nightly hospitality gathering).
 {¶ 19} Unlike the circumstances in those cases, Griffith was not injured in transit between his employment premises, lodging, and/or remote locations for food or entertainment. Indeed, Griffith's injury occurred on the same premises where his employer-authorized training was held, where he was provided room and board, and where appellee encouraged him to remain throughout the two-week training course. From the time of his arrival for the commencement of the training course, Griffith did not leave the academy until after his injury. Thus, this is not a case where the claimant traveled away from premises authorized by his employer to satisfy personal needs or desires, and we find this case distinguishable from Cline and the cases cited therein.
 {¶ 20} In Masden v. CCI Supply, Inc., Montgomery App. No. 22304,2008-Ohio-4396, the court considered a scenario in which the claimant was injured on the premises of his employer-authorized motel while out of town on an employment assignment. Masden's employer sent him to work as a carpenter on a construction site *Page 12 
in Utica, Michigan, and required him to stay at a specific motel, selected and paid for by the employer. Masden filed a workers' compensation claim for injuries he sustained in a physical altercation with other motel guests that arose while he was resting in his motel room after work hours. The Second District Court of Appeals held that, as a traveling employee, Masden was in the course of his employment the entire time he was traveling except when he was on a personal errand. The court further found that Masden was not on a personal errand when he was injured in the physical altercation. The court stated that, "what is critical is that Masden was in Utica, Michigan at the direction of [his employer] in furtherance of [its] business, and he had no choice but to live in a lodging facility away from his own home. Accordingly, there is sufficient evidence showing the injury was sustained `in the course of employment.'" Id. at ¶ 12. Similarly, here, Griffith was required to lodge away from home during the training course, which he attended with appellee's approval and for a purpose that would further appellee's business.
 {¶ 21} Because Griffith was on his free time when injured and had discretion regarding the use of his free time, the trial court found that Griffith's participation in the basketball game was purely personal and, therefore, that the traveling-employee doctrine did not bring Griffith's injury within the course of his employment. We disagree and find neither the fact that Griffith was on his free time nor that Griffith was engaged in recreational activity dispositive of whether he was in the course of his employment.
 {¶ 22} First, the fact that a claimant has finished his daily work at the time he or she sustains an injury is not determinative of whether the claimant is eligible to participate in the workers' compensation fund. See Elsass; Masden. An employee *Page 13 
need not be injured in the actual performance of work duties to be in the course of his employment. Ruckman at 120. In fact, the Ohio Supreme Court has even found that injuries sustained by an employee during unpaid attendance at a company-sponsored picnic were compensable. SeeKohlmayer.
 {¶ 23} Of particular relevance are cases addressing an employee's course of employment while waiting to return to duty. InPascarella, the Twelfth District addressed course of employment in relation to an airline pilot on an extended layover and noted that neither a required layover period nor recreational activities during the wait for resumption of actual duties constitutes a breach in a traveling employee's employment relationship. Id., citing Roadway Express, Inc. v.Workmen's Comp. Appeal Bd. (1987), 110 Pa.Commw. 619, 532 A.2d 1257,1260. Similarly, in Marbury, the Second District considered whether a conference participant remained in the course of her employment for workers' compensation purposes during after-hours activities. That court recognized that reasonable minds might conclude that the claimant was within the course of her employment when she participated in a non-required, evening bus tour available to conference participants at an extra cost, even though it ultimately determined that the claimant's decision to leave the bus to buy a souvenir was a personal errand, outside the course of her employment. Griffith's situation is akin to that of the pilot-claimant in Pascarella. Griffith was required to reside away from home while waiting for the resumption of training classes, and the fact that his injury occurred during "free time" is not controlling.
 {¶ 24} Ohio courts also have recognized that recreational activity is not, by its very nature, outside the course of an employee's employment. Notably, in Kohlmayer at *Page 14 
13, the Ohio Supreme Court found that a swimming injury at an employer-sponsored picnic was sustained in the course of employment because "[a] swimming injury is one which can reasonably be expected to occur at a company picnic at which swimming facilities are provided." See, also, Columbia Gas of Ohio, Inc. v. Sommer (1974),44 Ohio App.2d 69 (employee's injury while playing on an employer-sponsored basketball team was sustained in the course of employment).
 {¶ 25} Here, we conclude that Griffith was not engaged in a purely personal errand at the time of his injury, so as to sever the course of his employment and preclude participation in the workers' compensation fund. Griffith was at the academy with appellee's approval and was paid his normal wage during the training course. The purpose of Griffith's attendance was to enhance appellee's technical crash team, enhance Griffith's ability to perform his job duties, and enhance appellee's ability to investigate accidents independently from the highway patrol. Appellee strongly encouraged Griffith to remain at the academy throughout the training period, including his free time, in line with the highway patrol's own recommendation that trainees stay at the academy. The training course included room and board at the academy, and appellee would not pay for Griffith to stay or eat elsewhere.
 {¶ 26} In addition, the academy provided attendees with the use of its physical fitness facilities, a fact well-known to appellee, and injury from the use of the provided facilities can reasonably be expected. SeeMcDonald v. State Hwy. Dept. (1972), 127 Ga.App. 171, 176 ("[w]hen the employer paid for the employee's [hotel] accommodations and living expenses * * *, it did not just rent a bedroom for the employee, but the entire facilities — the lounge, swimming pool, lobby, etc. — and had *Page 15 
constructive knowledge that the employee would make use of the entire facilities on the premises"). Although training sessions had ended for the day, Griffith remained at the training academy, as encouraged by appellee, and engaged in physical activities consistent with his employment. Thus, applying the "in the course of" prong for workers' compensation coverage liberally in favor of Griffith, and looking at the time, place, and circumstances of Griffith's injury, we find that reasonable minds could only conclude that Griffith was injured in the course of his employment.
 {¶ 27} We now turn to the question of whether Griffith's injury arose out of his employment, i.e., whether there is a causal connection between the injury and the employment. To answer that question, we consider the totality of the circumstances, including, but not limited to, the proximity of the scene of the accident to the place of employment, the degree of control the employer had over the scene of the accident, and the benefit the employer received from the employee's presence at the scene of the accident. Lord at 444; Fisher at 278-279. In contrast to the trial court, we find that the totality of the circumstances establishes the requisite causal connection between Griffith's injury and his employment.
 {¶ 28} The trial court summarily concluded that Griffith is unable to satisfy the first Lord factor, regarding the proximity of the accident to the place of employment, because the academy is located approximately 80 miles from Miamisburg, Griffith's usual work location. We disagree with the trial court's analysis and find that the distance from Griffith's usual work location is not controlling where, at the time of the injury, Griffith was away from home for work-related purposes. In another scenario involving an employee away from his home base, the Third District analyzed the *Page 16 
proximity factor by apprising how far removed the scene of the injury was in time, space, and purpose from the truck-driver claimant'slast place of employment, whether that be considered his delivery point or his motel. See Elsass. We find this approach preferable to that utilized by the trial court here.
 {¶ 29} Griffith contends that he was injured on the premises of his employment and that the proximity factor, therefore, necessarily weighs in favor of coverage. In Richardson, this court considered a claim by a Dayton resident whose employer assigned him to a construction project in Columbus and paid for his motel accommodations during the week. We stated that, while in Columbus, the claimant was a fixed-situs employee, suggesting that the temporary construction site to which he was assigned was the claimant's place of employment for purposes of his workers' compensation claim. More directly, in Faber v. R.J. Frazier Co. (1991),72 Ohio App.3d 9, the Eleventh District found that the claimant, who was assigned by his employer to work at a plant owned by Cleveland Electric Illuminating Company ("CEI") was on the employment premises when killed in an automobile accident on a private access road within CEI's property, even though his employer did not own, maintain or control that property. Accordingly, the court concluded that the claimant satisfied the proximity factor from Lord.
 {¶ 30} Appellee does not dispute that, had Griffith been injured during the formal training programs at the academy, his injury would have arisen out of his employment. Moreover, in its appellate brief, appellee admits that, "[a]lthough the [academy] was not owned by Griffith's employer, [appellee], it would be considered `on-premises' just as the CEI plant was considered on-premises in Faber." Thus, we find that, for purposes of *Page 17 
workers' compensation coverage, the academy was, at least, the location of Griffith's last employment. However, even were we to find that the academy did not constitute Griffith's employment premises for the duration of the training course, we do not find that the scene of Griffith's injury was too far removed in time, space, and purpose from his last employment to find a causal connection between the injury and the employment. Therefore, the first factor listed in Lord weighs in favor of coverage.
 {¶ 31} The trial court also summarily found that Griffith was unable to satisfy the second Lord factor, regarding the employer's degree of control over the scene of the accident. While we agree that appellee had no direct control over the academy's facilities, we do not necessarily find that fact dispositive of the control factor. In Masden, the court found that the Lord factors supported a causal connection between the injury and employment despite the employer's lack of direct control over the employee's motel, the scene of the injury. The court noted that the employer selected and paid for the employee's motel, would not pay for alternative accommodations, and required the employee to remain in the vicinity of his assigned work site. Similarly, in Faber, although the employer did not control the private access road where its employee was killed, it did not provide another means for its employee to access the work site. That court stated that ownership and control are not paramount to injuries sustained on the employment premises. Id. at 15. Thus, direct control over the physical scene is not an ironclad prerequisite to satisfaction of the second Lord factor. Here, appellee did exercise some control over Griffith's presence at the academy by authorizing Griffith's attendance, encouraging Griffith to remain at the academy throughout the course, including his free time, and refusing to reimburse Griffith for his *Page 18 
costs were he to leave the facility for alternative meals, lodging or entertainment. Furthermore, even without these considerations, the absence of this one factor cannot be considered controlling to deny coverage. Fisher at 280.
 {¶ 32} Finally, the trial court found that the third factor inLord, the employer's benefit from the claimant's presence at the scene of the accident, weighed against a finding that Griffith's injury arose out of his employment. Clearly, appellee derived a benefit from Griffith's presence at the academy for training, and the trial court agreed. It is also clear to this court that appellee benefited from Griffith lodging at the academy and remaining there during his free time. However, the trial court found that appellee derived no benefit from Griffith playing basketball at the academy on his free time. To the contrary, Griffith maintains that appellee benefited not only from his presence at the academy, but also from his physical activity because he was required to maintain a certain level of physical fitness as a condition of his employment.[2]
 {¶ 33} Griffith does not contend that, by virtue of appellee's physical fitness requirement, any injury he suffers while engaged in physical activity is compensable under the workers' compensation system. Indeed, we acknowledge that the Ninth District Court of Appeals recently held that a "remote causal connection that may be traced between an injury and the physical fitness requirements of an employer" was insufficient to demonstrate that the injury arose out of the claimant's employment. Young v. State Hwy. Patrol Dept. of Admin. Servs., Summit App. No. 23688, 2007-Ohio-7021, ¶ 12. The Young claimant, who was injured while playing basketball at the local *Page 19 
YMCA on his day off, was not required by his employment to be at the YMCA. The court recognized that the employer "did not require [the claimant] to participate in the basketball game by virtue of his employment," and stated that the employer's "general fitness requirements do not establish a causal connection between employment and every injury that may occur to a trooper in the course of physical activity." Id. We agree that an employer's general fitness requirement will not establish a causal connection between the employment and every injury sustained in physical activity, but we also find Young
distinguishable from this case because the Young claimant was not a traveling employee at the time of his injury.
 {¶ 34} Having Griffith stay at the academy benefited appellee by facilitating efficient training, aiding in Griffith's successful completion of the training, which in turn directly benefited appellee's technical crash team, and by saving appellee the costs of alternative room and board. Unlike the Young claimant, who was on his day off from work and had complete control over his free-time activities, Griffith was constrained by appellee's encouragement that he remain on the academy premises while away from home and was, therefore, limited to the activities and facilities available to trainees at the academy. Appellee knew that the academy provided physical training and workout facilities for attendees, and appellee could reasonably anticipate that Griffith would make use of those facilities, especially in light of appellee's physical fitness requirement. Further, injury from such activity could reasonably be anticipated. Appellee could not reasonably contemplate that Griffith, during the two-week training course, would neglect his personal needs or forfeit workers' compensation benefits from resultant injuries. Therefore, we find that the third and final Lord factor weighs in favor of coverage. *Page 20 
 {¶ 35} Under the totality of the circumstances surrounding the unique facts of this case, and construing the statutory requirements liberally in favor of Griffith, we find that the evidence demonstrates the requisite causal connection between Griffith's injury and his employment.
 {¶ 36} For the foregoing reasons, we sustain Griffith's assignments of error, reverse the judgment of the Franklin County Court of Common Pleas, and remand this matter to the trial court with instructions to enter judgment in favor of Griffith.
Judgment reversed and cause remanded with instructions.
 TYACK and BROGAN, JJ., concur.
BROGAN, J., of the Second Appellate District, sitting by assignment in the Tenth Appellate District.
[1] The day's training had included taser training in the gymnasium. When tasers are fired, the cartridge jackets "explode off" the tasers and fall to the ground. (Griffith Depo. 60.) After his injury, Griffith noticed that more than 20 taser cartridge jackets remained on the gymnasium floor.
[2] It is undisputed that, as a condition of employment, Miamisburg police officers are required to maintain a level of fitness that will permit them to effectively carry out their duties. *Page 1