[Cite as *Woodard v. Cassens Transport Co.*, 2012-Ohio-4015.]

**IN THE COURT OF APPEALS OF OHIO**
**THIRD APPELLATE DISTRICT**
**UNION COUNTY**

GREGORY A. WOODARD,

    PLAINTIFF-APPELLEE,

                                CASE NO. 14-11-22

    v.

CASSENS TRANSPORT CO.,

    DEFENDANT-APPELLANT,
    -AND-                            O P I N I O N

MARSHA P. RYAN, ADMR., OHIO BWC,

    DEFENDANT-APPELLEE.

Appeal from Union County Common Pleas Court
Trial Court No. 10 CV 0348

Judgment Reversed and Cause Remanded

Date of Decision: September 4, 2012

APPEARANCES:

    *Corey V. Crognale* for Appellant, Cassens Transport Co.

    *Craigg E. Gould* for Appellee, Gregory A. Woodard

    *Derrick L. Knapp* for Appellee, Admr. Ohio BWC

Case No. 14-11-22

**PRESTON, J.**

{¶1} Defendant-appellant, Cassens Transport Company ("Cassens"), appeals the September 29, 2011 judgment of the Union County Court of Common Pleas finding plaintiff-appellee, Gregory A. Woodard ("Woodard"), is entitled to participate in the Workers' Compensation Fund because of an injury he sustained in the course of and arising out of his employment with Cassens. For the reasons that follow, we reverse.

{¶2} Cassens is in the business of transporting automobiles. Woodard had been employed as a "car hauler" for Cassens since 1976 and was assigned to Cassens' terminal located in Marysville, Ohio. As part of his job responsibilities, Woodard loaded and delivered new cars to car dealerships throughout the Midwest, eastern, and southern parts of the country. During a typical week, Woodard was on the road for five or six days. Woodard was paid mileage for the miles he drove, and he was also paid for loading and unloading the truck. While employed with Cassens, Woodard traveled approximately 100,000 miles per year.

{¶3} The Federal Motor Carrier Safety Regulations ("FMCSR") require drivers like Woodard to keep a driver's log to record every change in "duty status" for each 24 hour period. *See* 49 C.F.R. 395.8(a). For example, Woodard must record whether he is driving, on-duty but not driving, sleeper berth, or off-duty. 49 C.F.R. 395.8(b). "Off-duty" status means Woodard is not on duty, is not

required to be in readiness to work, or is not under any responsibility for performing work. *See* 49 C.F.R. 395.8(h)(1). Drivers such as Woodard are required to keep this log to ensure that they accumulate the appropriate amount of "off-duty" hours to be compliant with the FMCSR. During this time, the driver is declared "out of service," which means that the driver cannot operate his vehicle until the expiration of the mandatory "off duty" period. *See* 49 C.F.R. 395.13.[1]

{¶4} Cassens' collective bargaining agreement ("CBA") with the automobile transporters union states that "[c]omfortable, sanitary lodging shall be provided by [Cassens] in all cases where an employee is required to take a statutory rest period away from his home terminal * * *." (Article 42, CBA). The CBA allocates to Cassens the right to designate the place of lodging for their drivers when the drivers are on the road and required to take their federally mandated rest period. In addition to paying for gas, these accommodations are the only expenses that Cassens is obligated to pay. Thus, Woodard is not reimbursed for any other expenses—such as food, drink, or entertainment—incurred while on duty or during his federally mandated "off-duty" time.

{¶5} As a means of meeting its lodging obligations under the CBA, Cassens voluntarily participates in a program with Corporate Lodging Corporation ("CLC"). This program includes a network of various hotels and motels across the

---

[1] There was some implication in the briefs and at oral argument that the "duty status" classifications were specifically derived from the CBA between Cassens and the automobile transporters union. There is no evidence of this in the record.

nation. Cassens employees such as Woodard are given a CLC credit card that can only be used to purchase accommodations at a hotel or motel participating in the program. Cassens employees are provided with a list of the participating hotels and motels in each state.[2] CLC handles the initial billing from the participating hotels and motels, and then processes all the bills accumulated by Cassens employees. CLC then submits one bill to Cassens to pay. Cassens receives a reduced rate if their employees stay at the hotels and motels that participate in the program with CLC. Cassens also saves on the time and administrative expense it would cost their employees to process the lodging invoices of its 1,200 drivers by having CLC handle the initial billing from the lodging accommodations.

{¶6} On March 1, 2010, Woodard left Marysville with one of Cassens' trucks carrying a load of cars and drove to St. Louis, Missouri, where he completed the majority of his scheduled deliveries. However, due to a delay caused by an accident on the highway, Woodard was unable to reach the last two dealerships on his schedule before they closed, and, as a result, was required to stay overnight in the vicinity so that he could deliver the cars the next morning. That night, Woodard stayed in a hotel in Fenton, Missouri and used the CLC credit card issued to him by Cassens to pay for his accommodations.

---

[2] Cassens employees are permitted to stay in non-participating hotels and motels so long as the rate is reasonable. If this occurs, the employee is reimbursed directly by Cassens at a later time. However, the record demonstrates that Woodard stayed in CLC approved accommodations during this particular run.

-4-

{¶7} The next morning, on March 2, 2010, Woodard completed the last two deliveries on his schedule. Woodard then called Cassens' central dispatch for further instructions. Cassens told Woodard to drive to Lafayette, Indiana to pick up a "backhaul load" of cars. According to the record, a driver picks up a "backhaul load" of cars from another Cassens' terminal after he or she has delivered all the cars on the original run. Having the driver pick up a "backhaul load" allows Cassens to "maximize [the] loaded miles" so that the driver is not driving an empty car carrier on the return trip to the home terminal. (Robinson Depo. at 18). Woodard informed Cassens that he would be unable to reach the Lafayette terminal to pick up the "backhaul load" before it closed at 4:00 p.m. Cassens told Woodard that he could pick up the load the next morning, which meant that Woodard would have to stay the night in a hotel.

{¶8} Woodard arrived in Lafayette, Indiana at approximately 4:30 p.m. later that day. Woodard parked the truck, checked into the Quality Inn and Suites, located within two or three miles of the Lafayette terminal, and used the CLC credit card provided to him by Cassens. Woodard was considered "off-duty" in his daily driver's log at this point and was relieved of any responsibility for Cassens' car carrier while at the hotel. Later that evening, Woodard ordered a pizza, watched T.V., and went to bed. Around 2:00 a.m., Woodard woke up to use the bathroom. Woodard walked into the bathroom and slipped and fell on the tile

floor, injuring his left knee. Woodard then scooted himself across the floor and pulled himself up onto the bed, but he was unable to fall back asleep due to the amount of pain and discomfort.

{¶9} A few hours later, at 5:30 a.m. on March 3, 2010, Woodard called Gary Robinson, Cassens' Marysville terminal manager, and informed him that he had injured his knee and needed to seek medical attention. Robinson told Woodard that he would contact the Lafayette terminal when it opened at 7:00 a.m. and make arrangements to see a doctor. Two drivers from the Lafayette terminal arrived at Woodard's hotel. One driver took Woodard to a medical clinic, and the other driver took Woodard's truck to the Lafayette terminal. Robinson drove one of Cassens' pick-up trucks from Marysville to Lafayette to bring Woodard back to Ohio.[3] Woodard never returned to work for Cassens after sustaining this injury.

{¶10} Woodard filed an application for workers' compensation benefits for his injury, which was determined to be an acute left knee sprain. Woodard alleged that he received the March 3, 2010 injury in the course of and arising out of his employment with Cassens. A district hearing officer for the Industrial Commission of Ohio allowed Woodard's claim, finding that Woodard sustained the injury in the course of and arising out of his employment with Cassens. Cassens appealed the decision. In a subsequent review, a staff hearing officer for

---

[3] According to the record, Marysville is approximately 200 miles from Lafayette, Indiana.

the Industrial Commission allowed the claim, also determining that Woodard was injured in the course of and arising out of his employment with Cassens. Cassens again appealed the decision, but the Industrial Commission refused further review.

{¶11} On July 2, 2010, Cassens appealed the decision of the Industrial Commission to the Union County Court of Common Pleas pursuant to R.C. 4123.512. Woodard then filed a petition with the trial court alleging his entitlement to participate in the workers' compensation system. Depositions of Woodard and Robinson were submitted in the case. On April 27, 2011, Cassens filed a motion for summary judgment. On May 3, 2011, Woodard filed a memorandum contra to Cassens' motion and his own motion for summary judgment. On June 1, 2011, the trial court overruled both parties' motions for summary judgment.

{¶12} On July 6, 2011, a bench trial was held. Both Woodard and Robinson testified. On August 19, 2011, the trial court issued its opinion, finding Woodard was entitled to participate in the Workers' Compensation System, because he received his injury in the course of and arising out of his employment.

{¶13} On September 29, 2011, the trial court issued its final judgment entry. Cassens now appeals from this judgment of the trial court, asserting the following assignment of error:

**THE TRIAL COURT'S DETERMINATION THAT PLAINTIFF SUFFERED AN INJURY IN THE COURSE OF,**

**AND ARISING OUT OF, HIS EMPLOYMENT WITH CASSENS IS ERRONEOUS AND MUST BE REVERSED.**

{¶14} In its sole assignment of error, Cassens argues that Woodard, a traveling employee, was not injured in the course of his employment, because his trip to the bathroom was a purely personal and private mission occurring while Woodard was in off-duty status. Cassens further argues that Woodard's injury did not arise out of his employment because there was an insufficient causal connection between his injury and his employment.

{¶15} An appeal from the Industrial Commission to a trial court under R.C. 4123.512 regarding a claimant's right to participate in the workers' compensation scheme is a de novo determination of matters of law and fact. *Oswald v. Connor*, 16 Ohio St.3d 38, 42 (1985), citing *Swanton v. Stringer*, 42 Ohio St.2d 356, 359 (1975). Therefore, the Rules of Civil Procedure apply, and the trial court must disregard the Industrial Commission's decision and rationale. *Steele v. Crawford Machine, Inc.*, 184 Ohio App.3d 45, 2009-Ohio-2306, ¶ 11 (3d Dist.). Review of the trial court's decision is limited, however, and "'[i]f the evidence before that [trial] court is sufficient to support the result reached, [the reviewing] court will not substitute its judgment.'" *Hickle v. Hayes-Albion Corp.*, 3d Dist. No. 13-06-24, 2007-Ohio-4236, ¶ 23, quoting *Oswald v. Connor*, 16 Ohio St.3d 38, 42 (1985).

{¶16} Revised Code 4123.01(C) defines a compensable injury under the Worker's Compensation Act as:

> \* \* \* any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment.

Thus, to be a compensable injury, it must occur "in the course of" *and* "arising out of," the claimant's employment. R.C. 4123.01(C); *Bralley v. Daugherty*, 61 Ohio St.2d 302, 303 (1980). The Supreme Court of Ohio has expressly recognized that this test is conjunctive in nature, requiring each prong to be satisfied before compensation is allowed. *Fisher v. Mayfield*, 49 Ohio St.3d 275, 277 (1990). As a general rule, the worker's compensation statute must be liberally construed in favor of the employee; nevertheless, the claimant bears the burden to prove both prongs of this two-prong formula. R.C. 4123.95; *Fisher* at 278.

{¶17} The Supreme Court of Ohio summarized the *in the course of* employment prong of the statutory formula as follows:

> The phrase "in the course of employment" limits compensable injuries to those sustained by an employee while performing a required duty in the employer's service. "To be entitled to workmen's compensation, a workman need not necessarily be injured in the actual performance of work for his employer." An

injury is compensable if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business. *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 120 (1998) (internal citations omitted).

In analyzing whether an injury occurred in the course of employment, a court must consider factors such as "time, place, and circumstances" of the injury to determine the existence of a nexus between the employment and the activity causing the injury. *Fisher* at 277. "If the injuries are sustained [off premises], the employe[e] * * * must, at the time of his injury, have been engaged in the promotion of his employer's business and in the furtherance of his affairs." *Ruckman* at 121, quoting *Indus. Comm. v. Bateman*, 126 Ohio St. 279 (1933), paragraph two of the syllabus.

{¶18} The second prong of the statutory formula requires that an injury *arise out of* the employment. This inquiry in particular refers to a sufficient causal connection between the employment and the injury. *Fisher*, 49 Ohio St.3d at 277. "Whether there is a sufficient 'causal connection' between an employee's injury and his employment to justify the right to participate in the Workers' Compensation Fund depends on the totality of the facts and circumstances surrounding the accident, including the (1) proximity of the scene of the accident

to the place of employment; (2) the degree of control the employer had over the scene of the accident; and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." *Lord v. Daugherty*, 66 Ohio St.2d 441 (1981), syllabus.

{¶19} The Court of Appeals has recognized the traveling employee doctrine in the worker's compensation context. A traveling employee is one whose "work entails travel away from the employer's premises." *Pascarella v. ABX Air, Inc.*, 12th Dist. No. CA98-01-002, *3 (Aug. 10, 1998) citing 2 LARSON, WORKERS' COMPENSATION LAW (1997) 5-286, Section 25.00. Generally, a traveling employee is considered to be in the course of his or her employment *continuously* during an employment-related trip, *except* when a distinct departure on a personal errand is shown. *Pascarella* at *4. *See*, *also*, *Masden v. CCI Supply, Inc.*, 2d Dist. No. 22304, 2008-Ohio-4396, ¶ 12 (claimant-construction worker was a traveling employee in the course of his employment when he was injured in a fight after he attempted to get motel guests to quiet down so co-workers and he could get necessary rest for the next work day); *Cline v. Yellow Transp.*, *Inc.*, 10th Dist. No. 07AP-498, 2007-Ohio-6782, ¶ 18-20 (an over-the-road truck driver struck by a car while crossing the street to eat at a restaurant located across from his hotel was on a personal errand, and therefore, not entitled to workers' compensation benefits).

**{¶20}** Despite the fact that courts have recognized a traveling employee doctrine, it is important to remember that:

> [t]he Act is not meant to impose a duty on an employer as an absolute insurer of the employee's safety. Rather, the Act is intended to protect employees against the risks and hazards incident to the performance of their duties. * * * The mere fact that an injury occurred during employment is not sufficient to establish entitlement to benefits. *Carrick v. Riser Foods*, 115 Ohio App.3d 573, 577 (8th Dist.1996).

In fact, a traveling employee "'does not have a special status for the purpose of coverage under the Ohio Workers' Compensation Law' and * * * entitlement to benefits should be determined under the Fisher standard, requiring consideration of the time, place, and circumstances of the injury." *Griffith v. Miamisburg*, 10th Dist. No. 08AP-557, 2008-Ohio-6611, ¶ 13, quoting *Budd v. Trimble*, 10th Dist. No. 94APE04-589 (Dec. 22, 1994). For that reason, whether a traveling employee or not, "[a]t the time of the injury, the employee must be performing a required duty done directly or incidentally in the service of the employer as opposed to personal business, disconnected with the employment." *Cline*, 2007-Ohio-6782, at ¶ 15, citing *Fletcher v. Northwest Mechanical Contractors*, *Inc.*, 75 Ohio App.3d

466, 471 (6th Dist.1991), citing *Indus. Comm. v. Ahern*, 119 Ohio St. 41 (1928), paragraphs two and three of the syllabus.

{¶21} This case is factually similar to *Lewis v. TNT Holland Motor Express, Inc.*, 129 Ohio App.3d 131 (9th Dist.1998) and *Jones v. USF Holland, Inc.*, 10th Dist. No. 10AP-537, 2011-Ohio-2368 where the Court of Appeals determined that over-the-road truck drivers' slip and fall accidents in hotel bathrooms did not "arise out of" their employment to qualify for workers' compensation benefits. Examining the *Lord* factors, the Court in *Lewis* reasoned: "[i]t is difficult to conceive how his employer could have prevented Lewis from slipping and falling while leaving the bathtub. The control over the bathtub conditions was solely with the hotel. * * * [F]alling out of a bathtub after taking a shower is not a risk incident to the duties of a long-distance truck driver." *Id*. at 134. Similarly, the Tenth District in *Jones* reasoned that an over-the-road truck driver's slip and fall in a hotel bathroom while off-duty did not "arise out of" his employment:

> Contrary to [the truck driver's] contention, the hotel was not in close
> proximity to USF Holland's truck terminal. Although USF Holland
> did select the hotel and pay for [the truck driver's] room, it had
> absolutely no control over the scene of the accident. We recognize
> that USF Holland received some benefit from [the truck driver's]

presence at the scene of the accident. USF Holland did benefit from having a well-rested employee. It may also have benefited from [the truck driver's] decision to stay at the Howard Johnson Inn. Nevertheless, [the truck driver] was not engaged in an activity that was logically related to USF Holland's business nor incidental to it when he slipped on the bathroom floor after taking a shower. There is simply an insufficient causal nexus between the highly personal act of taking a shower and USF Holland's business of transporting cargo by truck. To conclude otherwise would convert the "arising out of employment" prong into a simple "but for" test. Therefore, we conclude as a matter of law that [the truck driver's] injury did not "arise out of" his employment as required by R.C. 4123.01(C). 2011-Ohio-2368 at ¶ 23.

{¶22} Like the truck drivers in *Lewis* and *Jones*, Woodard slipped and fell in the bathroom of his hotel while he was off-duty away from the terminal and engaged in a highly personal act, not incidental to his employment. While the hotel Woodard stayed in was only four or five miles from the Lafayette, Indiana terminal, it was around two hundred miles from Woodard's home terminal in Marysville, Ohio. (July 6, 2011 Tr. at 11, 30). Cassens transport had no control over the hotel bathroom (the accident scene), except that the hotel was part of the

CLC network of hotels and motels with which Cassens participated. Moreover, we fail to see how the act of using the restroom in the middle of the night is anything but a "personal mission" "disconnected with the employment," similar to taking a shower or walking to get something to eat. *Lewis*, 129 Ohio App.3d 131; *Jones*, 2011-Ohio-2368; *Cline*, 2007-Ohio-6782. Viewing the undisputed facts in light of *Lord, Lewis*, *Jones*, and *Cline*, we conclude that Woodard's injury did not "arise out of" his employment with Cassens as a matter of law. Therefore, Woodard is not entitled to participate in the workers' compensation system, and the trial court erred as a matter of law.

{¶23} The dissent raises several concerns with our opinion, all of which are unpersuasive. Initially, the dissent attempts to criticize our observation that Woodard was "off-duty" at the time of the accident. As the dissent points out, our jurisprudence dictates that the claimant-worker's "off-duty" status is not *dispositive* of whether or not an injured worker is entitled to workers' compensation benefits. *Elsass v. Commercial Carriers, Inc.*, 73 Ohio App.3d 112, 115 (3d Dist.1992). That is not to say, however, that the claimant-worker's "off-duty" status is totally irrelevant, as the dissent seems to suggest. Indeed, *Fisher* instructs a reviewing court to examine the "time, place, and circumstances" of the injury to determine whether a sufficient nexus exists between the employment and the activity causing the injury. 49 Ohio St.3d at 277. Regardless, our analysis

does not depend upon Woodard's "off-duty" status since we rely primarily upon two nearly identical cases, *Jones* and *Lewis*, which are premised upon the "arising out of" prong prescribed by R.C. 4123.01(C). Despite its efforts, the dissent has failed to distinguish this case from either *Jones* or *Lewis*.

{¶24} The dissent attempts to cast doubt upon the *Jones* and *Lewis* decisions—to the extent of characterizing *Jones* an "outlier in [the Tenth District's] jurisprudence." In its attempt to case doubt upon *Jones*, the dissent points to two factually distinguishable cases from the Tenth District, *Griffith v. City of Miamisburg* and *Lippolt v. Hague*, which the dissent argues are inconsistent with *Jones*. 2008-Ohio-6611; 10th Dist. No. 08AP-140, 2008-Ohio-5070.

{¶25} In *Griffith*, a police officer attending a two-week training course at the Highway Patrol training academy was injured while playing a basketball game at the facility with his colleagues on his "free time," i.e. after the scheduled course training. 2008-Ohio-6611, at ¶ 2-3, 21. The dissent argues that Woodard's off-duty middle-of-the-night bathroom break injury should be eligible for workers' compensation benefits since the police officer's "free time" basketball game injury was eligible. While this argument appears to have merit at first glance, further inspection of the facts the Court in *Griffith* relied upon sheds light upon why the police officer's basketball game injury was eligible. The Court in *Griffith* noted

that the employer strongly encouraged the police officers to remain at the training facilities even during their "free time" and, in fact, refused to reimburse any costs they incurred outside of the facility. *Id.* at ¶ 31. Additionally, concerning the causal connection between the police officer's employment and his injury, the Court noted that the employer could reasonably anticipate (especially in light of its encouragement to stay on-campus and its refusal to pay for costs incurred off-campus) that the officer would utilize the physical fitness facilities *in light of the job's physical fitness requirements*. *Id.* at ¶ 34. Unlike the employer in *Griffith*, Cassens allowed its truck drivers to deviate from the approved list of hotels/motels if the cost was reasonable; and therefore, Cassens exercised less control over the injury scene than the employer in *Griffith*. More significantly, as it relates to the "arising out of" prong in R.C. 4123.01(C), the employer's benefit from the basketball game in *Griffith* was greater than the benefit Cassens derived from Woodard's middle-of-the-night bathroom break. The basketball game was on-campus where all the "technical crash team" members were present, thereby facilitating team-building and helping the officers maintain their physical fitness, an employment requirement. The benefit derived by Cassens from Woodard's middle-of-the-night bathroom break was minimally, if at all, related to Woodard's employment.

**{¶26}** The dissent also argues that Woodard's middle-of-the-night bathroom break was a basic, "personal need" that Cassens should have reasonable anticipated (and, therefore, covered under workers' compensation) like the officer's personal need of physical fitness in *Griffith*. We disagree. Whether or not the officer's physical fitness can be classified as a "personal need" is irrelevant; rather, it is the relationship between the personal need and the employment that is relevant to determine if the injury "arises out of" the employment. Indeed, if the Tenth District employed the "personal need" test in *Griffith* as the dissent opines, then an employee's injury while getting food should be no less compensable; and yet, the Tenth District has concluded just the opposite. *Cline*, 2007-Ohio-6782, at ¶ 18-20. We are, therefore, persuaded that the determinative factor in *Griffith*, as it should be here as well, was not the personal nature of the activity giving rise to the injury *but* the causal connection between the accident giving rise to the injury and the claimant-employee's employment.

**{¶27}** In *Lippolt v. Hague*, a traveling salesman on an out-of-town business trip was injured when, after arriving at the hotel where he was staying the night and exiting his vehicle to check-in, he slipped and fell on ice in the parking lot. 2008-Ohio-5070, ¶ 2-4. The dissent argues, just as the unsuccessful employee-claimant in *Jones* argued, that the Tenth District's decision in *Lippolt* is inconsistent with its decision in *Jones*. Of course, members of the *Jones* court

would disagree, as do we. The Court in *Jones* concluded that, when viewing the totality of the facts and circumstances, a traveling salesman's act of exiting his parked vehicle to check into the hotel where he was spending the night for the next-day's business was more related to the employer's business and more related to the furtherance of the employer's affairs than an over-the-road truck driver's act of taking a shower in a hotel room. 2011-Ohio-2368, ¶ 25. In reaching this conclusion, the Court in *Jones* recognized what is commonly understood in workers' compensation jurisprudence—that cases are fact-specific, creating results which appear on their face disparate but are, in reality, fact-driven. *Id.*; *Fisher*, 49 Ohio St.3d at 280 ("workers' compensation cases are, to a large extent, very fact specific. As such, no one test or analysis can be said to apply to each and every factual possibility. Nor can only one factor be considered controlling. Rather, a flexible and analytically sound approach to these cases is preferable. Otherwise, the application of hard and fast rules can lead to unsound and unfair results."). Such is the trade-off when employing a "flexible and analytically sound approach," as the Ohio Supreme Court has instructed, instead of bright-line rules.

{¶28} Cassens' assignment of error is, therefore, sustained.

{¶29} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

Case No. 14-11-22

**WILLAMOWSKI, J., concurs.**

**SHAW, P.J., dissents**

{¶30} In reversing the determinations of the Industrial Commission hearing officers and the trial court, the majority focuses on the fact that Woodard was on "off-duty" status and away from his home terminal at the time he was injured. The majority also determined that Woodard's injury was not compensable because he sustained it while he was engaged in a "highly personal act," which was not incidental to his employment. However, based on the circumstances of this case including in particular that Cassens *specifically instructed* Woodard to pick-up the "backhaul load" *knowing that this would require Woodard to stay overnight at a hotel* because the Lafayette terminal would be closed by the time Woodard arrived, I concur with the determinations of the district hearing officer, the staff hearing officer and the Common Pleas Court that Woodard sustained his injury in the course of and arising out of his employment with Cassens. Therefore, I respectfully dissent from the majority opinion.

{¶31} Contrary to the majority, I do not believe that Woodard's "off-duty" status alone prevents him from being entitled to receive workers' compensation benefits. In prior cases, courts, including this one, have consistently found the simple fact that a claimant has finished his daily work at the time he or she

-20-

sustains an injury is not determinative of whether the claimant is eligible to participate in the Workers' Compensation Fund.

{¶32} In *Griffith v. City of Miamisburg*, 10th Dist. No. 08AP-557, 2008-Ohio-6611, the claimant was a police officer attending a two-week training course at the Ohio Highway Patrol training academy at the direction of his employer. The training course consisted of formal, daily training activities from 8:00 a.m. to 5:00 p.m., followed by dinner until 6:00 p.m. The period after dinner from 6:00 p.m. until 8:00 a.m. was considered Griffith's "own time." After dinner one evening, Griffith walked down to the workout facilities on the grounds of the academy and played in a basketball game. During the game, Griffith stepped on the jacket of a discarded taser cartridge and twisted his right knee. Griffith subsequently filed a claim seeking workers' compensation benefits, which was denied by the trial court. The trial court cited the fact that Griffith was on his own free time and had discretion regarding the use of his free time, in addition to the fact that his participation in the basketball game was purely personal, as reasons to support its conclusion that Griffith was not in the course of his employment when he was injured. The Tenth District disagreed with the trial court and found that "neither the fact that Griffith was on his free time nor that Griffith was engaged in recreational activity [was] dispositive of whether he was in the course of his employment." *Id*. at ¶ 21. The court went on to find that Griffith's injury

occurred in the course of his employment reasoning that Griffith was not engaged in a personal errand, was required to reside away from home while waiting for the resumption of the training classes, and specifically found that the "fact that his injury occurred during his 'free time' is not controlling." *Id*. at ¶ 23.

{¶33} In *Elsass v. Commercial Carriers, Inc*., 73 Ohio App.3d 112 (3d. Dist.1992), the claimant was an over-the-road truck driver who went "off-duty" upon his arrival at his hotel at 6:30 p.m. in Alexandria, Virginia. Later that evening, Elsass met up with two other truck drivers at the hotel. The men then called a taxicab to drive them to Washington D.C. so that they could get some food and some "action," meaning a restaurant with topless waitresses or nude dancing. At approximately three hundred yards from their intended destination, the taxicab was involved in a traffic accident causing injuries to Elsass. In determining whether Elsass was entitled to participate in the Workers' Compensation Fund, this Court found the fact that Elsass was "off-duty" when he sustained his injuries was not determinative. In particular, we found:

> **It is uncontested that under Section 395 of the Federal Motor Carrier Safety Regulations, appellant, having already driven for some nine and one-half hours that day, was required to spend the night in the area of his delivery point. Accordingly, the mere fact that appellant had finished his work for the day and his log book showed him to be "off duty" is not dispositive on the issue of whether or not appellant is eligible to participate in the Workers' Compensation Fund, as [the employer] seemingly argues.**

*Id.* at 114-115. While we ultimately found that Elsass was not entitled to workers' compensation benefits because the scene of the accident "was too far removed in time, space and purpose from Elsass' last employment, *whether that be considered the delivery point in Falls Church, Virginia or the motel in Alexandria, Virginia*," we concluded that Elsass' "off-duty status" was not controlling to our determination. *Id.* at 115 (emphasis added).

{¶34} In reversing the decisions of the Industrial Commission hearing officers and the trial court, the majority also heavily relies on the decision in *Jones v. USF Holland, Inc.*, 10th Dist. No. 10AP-537, 2011-Ohio-2368, which involves facts similar to the instant case. Although not discussed by the majority, the Tenth District in *Jones* found the claimant to be a traveling employee in the course of his employment, *and not on a personal errand*, when he injured himself by slipping and falling on the ceramic tile in a hotel bathroom after taking a shower. Like Woodard, the claimant in *Jones* was an over-the-road trucker. Specifically, the court in *Jones* stated the following in reaching its conclusion as to whether the "in the course of employment" prong was satisfied.

> [B]ecause Jones was an over-the-road truck driver, he was a traveling employee. He was staying at a hotel approved and paid for by USF Holland when he was injured. Traveling was an essential part of Jones' job duties and, therefore, benefited USF Holland. Jones was staying at the hotel to comply with the federally-mandated rest period for over-the-road truck drivers. He was in a location encouraged by USF Holland and was engaged in conduct that was consistent with his employment

**responsibilities—i.e., preparing himself for his next work assignment. Although at the time he sustained his injuries, Jones was engaged in an activity associated with personal hygiene, we find that he was not on a personal errand. Therefore, contrary to the finding of the trial court, we conclude that Jones was "in the course of his employment" when he slipped in the bathroom after showering.**

*Id*. at ¶ 20.

**{¶35}** Here, the record clearly demonstrates that Woodard was a traveling employee when he performed his duties as a "car hauler" for Cassens. The nature of Woodard's employment with Cassens required him to travel several hundred miles a day across multiple state lines to transport cars for Cassens. Thus, traveling was an essential part of Woodard's job duties. As a traveling employee, Woodard was in the course of his employment the entire time he was traveling except when he was on a personal errand.

**{¶36}** Upon receiving his instructions from Cassens to pick-up the "backhaul load" in Lafayette, Indiana, Woodard informed Cassens that he was unable to reach the terminal before it closed that day. Cassens assured Woodard that his inability to be in Lafayette prior to the terminal closing would not be an issue because he could simply arrive at the Lafayette terminal the next morning to load his truck. This required Woodard to stay the night at a hotel in Lafayette, Indiana. Moreover, even if Woodard was not directed to stay overnight in

Lafayette, he was not free to return to Ohio once he reached the Lafayette terminal, because he had to comply with federally-mandated rest period.

{¶37} Like the claimant in *Jones*, Woodard was staying at a hotel approved and paid for by his employer when he was injured. At the time the injury occurred, Woodard was resting overnight at the hotel in between picking up loads of cars, which was an activity consistent with his contract for hire as a "car hauler" and logically related to Cassens' business of transporting automobiles across multiple state lines. In addition, there was nothing personal in nature regarding Woodard's presence at the hotel and his stay there only served to promote Cassens' business and was in furtherance of Cassens' affairs—i.e., to "maximize the loaded miles" by picking up the "backhaul load." Even though Woodard received his injury while using the bathroom at the hotel, this specific action was merely incidental to his employment which required him to stay the night in Lafayette, Indiana, and did not constitute such a distinct departure from his employment to be considered a personal errand.

{¶38} Notwithstanding the Tenth District's determination in *Jones* that the claimant was not on a personal errand and in the course of his employment when he sustained his injury while slipping and falling his hotel bathroom, the majority also primarily relies on the rationale set forth by the Tenth District in *Jones* to reverse the decisions of the Industrial Commission hearing officers and the trial

court on the basis that Woodard's injury did not arise out of his employment with Cassens. However, upon closer examination of the *Jones* case, it is apparent that the Tenth District only summarily applied the *Lord* factors discussed above in its decision to deny Jones' claim to participate in the Workers' Compensation Fund. Specifically, the court in *Jones* concluded that the hotel was *not in close proximity* to USF Holland's terminal, which was located between two to four miles from the hotel; that USF Holland had *no control* over the scene of the accident; and that although USF Holland received *some benefit* from Jones' presence at the hotel, this benefit was outweighed by the fact that "Jones was not engaged in an activity that was logically related to USF Holland's business nor incidental to it when he slipped on the bathroom floor after taking a shower." *Id*. at ¶ 23. Without any further analysis of the totality of facts and circumstances, the Tenth District found that

> **[t]here is simply an insufficient causal nexus between the highly personal act of taking a shower and USF Holland's business of transporting cargo by truck. To conclude otherwise would convert the 'arising out of employment' prong into a simple 'but for' test. Therefore, we conclude as a matter of law that Jones' injury did not 'arise out of' his employment as required by R.C. 4123.01(C).**

*Id.*

{¶39} In reaching its conclusion that Jones' injury did not arise out of his employment with USF Holland, the Tenth District solely relied on *Lewis v. TNT*

*Holland Motor Express*, 129 Ohio App.3d 131 (9th Dist. No. 1998). The claimant in *Lewis* was also an over-the-road trucker, who sustained an injury when he slipped and fell in the bathroom of his hotel room after taking a shower in preparation to resume his driving duties in between runs. The Ninth District limited its analysis to *one of the Lord factors*, which involved the degree of control the employer had over the scene of the accident, to conclude that the claimant's injury did not arise out of his employment. Specifically, the court in *Lewis* summarily concluded "[i]t is difficult to conceive how his employer could have prevented Lewis from slipping and falling while leaving the bathtub. The control over the bathtub conditions was solely with the hotel. * * * [F]alling out of a bathtub after taking a shower is not a risk incident to the duties of a long-distance truck driver." *Id.* at 134.

{¶40} Notably, the "arising out of" analysis in *Jones* relied on by the majority appears to be inconsistent with other Tenth District opinions involving injuries sustained by traveling employees while on an employment-related trip.

{¶41} In *Lippolt v. Hague*, 10th Dist. No. 08AP-140, 2008-Ohio-5070, the claimant was a traveling salesman who finished his scheduled visits for the day between 5:00 p.m. and 5:30 p.m., and decided to drive one and a half to two more hours to a hotel so that he would be closer to his next scheduled visit in the morning. Lippolt arrived at the hotel between 7:00 p.m. and 7:30 p.m., parked,

and exited his vehicle.  While walking to the hotel lobby to check in, Lippolt was injured when he slipped and fell on ice in the hotel parking lot and fractured his left ankle.  The Tenth District found that Lippolt received his injury in the course of and arising out of his employment.  Specifically, with regard to the "arising out of" prong, the court applied the *Lord* factors and concluded that the totality of the circumstances supported finding a causal connection between Lippolt's injury and his employment by stating the following:

> **First, despite [the employer's] contention that the hotel was over 100 miles and two hours from the last store Lippolt had visited,** *the Comfort Inn where Lippolt slipped was undisputedly in close proximity to the store Lippolt intended to visit early the next morning.*  **While [the employer] did not have any control over the scene of the accident and did not require Lippolt to stay at particular hotels,** *[the employer] granted Lippolt the authority to choose where he would stay each night and paid for Lippolt's lodging.*  **Most importantly, however, we find that [the employer] benefited from Lippolt's presence at the hotel.**  *Lippolt's presence at a hotel near the stores he was required to visit during his weeks on the road provided [the employer] with a refreshed and well-rested employee to perform services each day, enabled Lippolt to visit more stores throughout his multistate area on [the employer's] behalf, and eliminated the need for [the employer] to have employees in closer proximity to the stores in Lippolt's territory.*  **Unlike an employee whose duties are confined to specific identifiable locations, Lippolt's employment responsibilities encompassed his week-long travel every other week in furtherance of [the employer's] business.  Thus, upon review of the totality of the circumstances, we find that a sufficient causal connection between Lippolt's injury and his employment exists and that Lippolt's injury accordingly arose out of his employment with [the employer].**

*Id.* at ¶ 26 (emphasis added). The court in *Jones* provides a only cursory explanation to justify why its conclusion denying Jones workers' compensation coverage remains consistent with the decision in *Lippolt* by simply stating that "[a]n injury that occurs when a traveling salesman walks from his rental car to his hotel to check in has a greater causal connection to his employment than an injury that occurs when a traveling truck driver slips and falls in the bathroom of his hotel room after taking a shower." *Id.* at ¶ 25. However, when reviewing the court's actual application of the *Lord* factors in *Lippolt* there appears to be very few factual distinctions between the cases to warrant such disparate results.

{¶42} As previously discussed, in *Griffith v. City of Miamisburg*, 10th Dist. No. 08AP-557, 2008-Ohio-6611, the Tenth District reversed the determination of the trial court that the injury of the claimant, a police officer who was injured while playing in a basketball game during his free time at an academy training course, did not arise out of his employment. The court in *Griffith* thoroughly analyzed the application of the *Lord* factors to the totality of the circumstances in reaching its conclusion. Specifically, the court found that the *distance* from the claimant's usual work location was not controlling where, at the time of the injury, the claimant was away from home for work-related purposes. In fact, the Tenth District relied on our decision in *Elsass* as a preferable approach to analyze the *Lord* "proximity" factor. In *Elsass*, we assessed how far removed the scene of the

-29-

injury was in time, space, and purpose from the truck-driver claimant's *last place of employment, whether that be considered his delivery point or his motel.  See Griffith* at ¶ 28 citing *Elsass v. Commercial Carriers, Inc.*, 73 Ohio App.3d at 115. Based on this analytical approach, the court determined that the academy was Griffith's *location of last employment* for purposes of workers' compensation coverage and concluded that the proximity factor was satisfied.

{¶43} When analyzing the degree of control the employer had over the scene of the accident, the Tenth District in *Griffith* noted that "direct control over the physical scene is not an ironclad prerequisite to satisfaction of the second *Lord* factor."  *Griffith* at ¶ 31.  The court determined that the employer exercised *some* control over Griffith's presence at the academy because it authorized him to be there, encouraged him to remain at the academy throughout the course, including his free time, and refused to reimburse him for expenses were he to leave the facility for alternative food, lodging or entertainment.  The court further concluded that "even without these considerations, the absence of this one factor cannot be considered controlling to deny coverage."  *Id.* (compare this result to the one in *Lewis*, supra, where the lack of the *Lord* control factor *alone* was deemed sufficient to deny the truck-driver claimant worker's compensation coverage).

{¶44} Regarding the final *Lord* factor analyzing the benefit the employer received from the injured employee's presence at the scene of the accident, the

court in *Griffith* observed that the claimant was required by his employer to maintain a certain level of fitness. The court concluded that the employer could *reasonably anticipate* that Griffith would make use of the workout facilities on the academy grounds, that injury from such activity could occur, and that the employer could not reasonably contemplate that Griffith, during the two-week training course, "*would neglect his personal needs or forfeit workers' compensation benefits from resultant injuries*." *Griffith* at ¶ 34 (emphasis added).

{¶45} In applying this approach to the facts in *Jones*, *Lewis*, and the instant case, it is difficult to imagine a need more personal than attending to one's own personal hygiene by taking a shower or making use of the bathroom facilities. If the employer in *Griffith* could not reasonably contemplate that the claimant would neglect his personal fitness needs, then surely the employers in *Jones*, *Lewis*, and the case sub judice, also could not reasonably contemplate that the claimants would neglect their most basic personal hygiene needs in order to avoid forfeiting worker's compensation benefits from a potential resulting injury.

{¶46} After reviewing *Lippolt*, *Griffith*, and *Jones* together, the Tenth District's decision in *Jones* appears to be an outlier in that court's jurisprudence. Rather than thoroughly analyzing the totality of the circumstances and the *Lord* factors, as it did in *Lippolt* and *Griffith*, the court in *Jones* summarily concludes that there is an insufficient causal connection between *Jones*' injury and his

employment. However, when looking at the specific facts and circumstances of each case, and the particular way in which the court analyzed the *Lord* factors in *Lippolt* and *Griffith*, these cases appear to be less distinguishable from *Jones* than that court contends. Therefore, I find the analytical framework established in *Lippolt* and *Griffith* for assessing the satisfaction of the "arising out of" prong in cases involving traveling employees to be more persuasive, more consistent with our own prior jurisprudence, and hence preferable to the one used in *Jones* and endorsed by the majority in its opinion.

{¶47} In applying the principles set forth in *Lippolt* and *Griffith* to assess the totality of the circumstances of the case sub judice, I would find there to be a sufficient causal connection between Woodard's injury and his employment with Cassens.

{¶48} First, using the analysis in *Lippolt*, I believe the hotel, the site of Woodard's injury, was in close proximity to Cassens' terminal, where Woodard was instructed to be by Cassens in order to pick up the "backhaul load" the next morning. The record establishes that the hotel was two or three miles from Cassens' Lafayette terminal. Moreover, the proximity factor is also satisfied when assessing how far removed the scene of the injury was in time, space, and purpose from Woodard's last place of employment—whether that be considered Cassens' Lafayette terminal or the hotel itself. *See Griffith* at ¶ 28; *Elsass* at 115.

{¶49} Next, although Cassens did not have direct control over the physical scene of the injury, it did exercise *some* control over Woodard's presence at the hotel. Woodard stayed the night in Lafayette at the specific direction of Cassens in order to pick up the "back haul load" the next morning. Moreover, as previously discussed, Woodard was required to stay in Lafayette in order to comply with the Federal Motor Carrier Safety Regulations. Woodard stayed at a hotel approved and paid for by Cassens—a hotel which was on the CLC list for which Cassens received a discounted rate and a savings in administrative costs. Furthermore, as discussed in *Griffith*, even if these considerations are not enough to satisfy the "control" factor, the absence of one of the *Lord* factors is not controlling to deny coverage.

{¶50} Finally, Cassens received a clear benefit from Woodard's presence at the hotel. Woodard's presence at a hotel near the Lafayette terminal provided Cassens with a refreshed and well-rested employee ready to haul Cassens' cargo for hundreds of miles. Furthermore, instead of returning to Ohio from Missouri with an empty car carrier, Woodard drove to Lafayette, Indiana, to pick up another load of cars from the Cassens terminal so that Cassens could "maximize its loaded miles." This enabled Cassens to efficiently use its resources and eliminated the need for another driver to be assigned to the Lafayette terminal in order to carry the load back to Ohio.

**{¶51}** Furthermore, I disagree with the stringent construction of the totality of the circumstances inquiry utilized in *Jones* and *Lewis*, and endorsed by the majority in its opinion, in which the court summarily reviewed whether there was a causal connection between the claimant taking a shower and his employment as an over-the-road trucker. Rather, I believe the court's analysis in *Griffith* is a preferable approach to these cases, in which the court assessed whether the employer could "reasonably anticipate" that the claimant would engage in the activity resulting in injury while on an employment-related trip. This inquiry permits distinguishing daily personal comfort activities, such as taking a shower or using the bathroom facilities, which are purely ministerial and a function incidental to personal hygiene, from activities that constitute a distinct departure from one's employment, such as going to a nightclub or restaurant to seek personal entertainment and enjoyment. In addition, this inquiry also provides for a more flexible and analytically sound approach like the one advocated for by the Supreme Court of Ohio, instead of attempting to apply a set of superficial "bright line" rules which can lead to unsound and unfair results. *See Fisher*, 49 Ohio St.3d at 280.

**{¶52}** In reviewing the totality of the facts and circumstances of this case, and construing the statutory requirements liberally in favor of Woodard, I would find the evidence demonstrates that there is a sufficient causal connection between

Woodard's injury and his employment with Cassens. Therefore, I would conclude that the trial court did not err in finding that Woodard sustained his injury in the course of and arising out of his employment with Cassens. Accordingly, I believe the decisions of two Industrial Commission hearing officers and the trial court should be affirmed.

/jlr