[Cite as *Serraino v. Fauster-Cameron, Inc.*, 2013-Ohio-329.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

LINDAMARIE SERRAINO,

    PLAINTIFF-APPELLANT,          CASE NO. 4-12-11

    v.

FAUSTER-CAMERON, INC. ET AL.,      O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Defiance County Common Pleas Court
Trial Court No. 09-CV-40153

Judgment Affirmed

Date of Decision: February 4, 2013

APPEARANCES:

    *Marc G. Williams-Young* for Appellant

    *Scott G. Deller* for Appellee, Fauster-Cameron, Inc.,

    *Joshua W. Lanzinger* for Appellee, Bureau of Workers' Comp.

Case No. 4-12-11

**ROGERS, J.**

{¶1} Plaintiff-Appellant, Lindamarie Serraino, appeals the judgment of the Court of Common Pleas of Defiance County granting summary judgment in favor of Defendants-Appellees, Fauster-Cameron, Inc., dba Defiance Clinic ("Clinic"), Serraino's employer, and the Ohio Bureau of Workers' Compensation ("BWC"), barring her from participating in the workers' compensation fund as a result of contracting salmonella poisoning from an allegedly contaminated lunch served in the Clinic's break room.[1] On appeal, Serraino concedes that there are no genuine issues of material fact, but argues that the facts and prevailing law establish that her injury, i.e., salmonella poisoning, was sustained both "in the course of" and "arising out of" her employment with the Clinic. Consequently, Serraino argues that the trial court erred when it granted summary judgment in favor of the Appellees and when it denied her motion for partial summary judgment. Based on the following, we affirm the trial court's judgment.

{¶2} Sometime between 2002 and 2003, the Clinic hired a consulting firm to survey its employees about their satisfaction with their work environment. As a result of the survey, the Clinic implemented several programs for its employees, including a lunch program.

---

[1] The BWC is the only appellee that filed a brief in this appeal.

{¶3} In 2004, the Clinic began a lunch program in which it periodically invited local caterers to sell their food to employees in the Clinic's break room. The caterers, without guidance from the Clinic or its employees, predetermined what food they would offer. The menus were then forwarded to the Clinic, which advertised them via flyers and an employee newsletter. The caterers, without guidance or assistance from the Clinic or its employees, purchased, stored, and prepared the food at their place of business and transported the food to the Clinic. Once at the Clinic, the caterer, without guidance or assistance from the Clinic or its employees, prepared the break room for food service, served the food to patrons, and collected payment from each patron.

{¶4} Anyone with access to the break room, including the general public, could purchase food from the caterers. Participation in the lunch program was optional, and employees who opted to purchase food from the caterers paid full price. The Clinic did not receive any portion of the caterers' sales.

{¶5} In June 2005, Serraino began her employment with the Clinic as a medical technologist. During the first three months of her employment, Serraino trained during first shift, which lasted from 7:00 a.m. to 5:00 p.m. At this time, Serraino was allowed a one-hour unpaid lunch break and was free to spend her lunch break as she saw fit. During the first full week of August 2005, Serraino ate several catered lunches during her lunch break. On Saturday of that week,

Serraino became ill and sought medical treatment. Shortly thereafter, Serraino was diagnosed with salmonella poisoning.

{¶6} In addition to Serraino, there were five other confirmed cases of salmonella poisoning in Defiance County during the same period. The Defiance County Health Department ("DCHD") investigated the outbreak and issued a report containing its findings and conclusions. According to the report, each of the individuals who contracted salmonella poising consumed one or more catered lunches served at the Clinic during the first full week of August 2005. Consequently, much of the DCHD's investigation focused on the caterer, Classic Catering by Kim Brown ("Classic Catering"). The DCHD, however, was unable to identify the source of the salmonella bacteria that caused the outbreak.

{¶7} In January 2007, Serraino filed an application for workers' compensation benefits, claiming eligibility due to her salmonella poisoning. In February 2007, a district hearing officer for the Industrial Commission denied her claim. Serraino appealed the decision. In May 2007, a staff hearing officer for the Industrial Commission denied her claim. Serraino appealed the decision again, but in June 2007 the Industrial Commission refused further review.

{¶8} In September 2009, Serraino appealed the matter to the Court of Common Pleas of Defiance County.[2] Serraino alleged that she contracted salmonella poisoning when she consumed food served by a caterer that was invited by the Clinic to serve food in its break room. As a result, Serraino claimed that she was eligible to receive workers' compensation benefits since her poisoning, which she characterized as an injury, was sustained in the course of and arising out of her employment with the Clinic.

{¶9} In January 2010, the BWC and the Clinic (collectively "Appellees") filed a joint motion for summary judgment, arguing that Serraino's poisoning did not occur in the course of or arise out of her employment with the Clinic.

{¶10} In September 2010, Serraino filed a memorandum in opposition to Appellees' joint motion for summary judgment. Serraino conceded that there were no genuine issues of material fact, but argued that the facts and prevailing law establish that she is eligible to receive workers' compensation benefits. In support, Serraino attached an affidavit of Dr. Harry Hull ("Dr. Hull"). Dr. Hull, an epidemiologist, attested that "to a reasonable degree of medical and scientific certainty, Lindamarie Serraino contracted a salmonella disease as a direct or proximate result of ingesting food prepared by Classic Catering by Kim Brown,

---

[2] Serraino alleges, and the Appellees admit, that she timely appealed the denial of her claim to the Court of Common Pleas of Defiance County, but voluntarily dismissed her complaint on September 12, 2008. She then re-filed her appeal in September of 2009.

Case No. 4-12-11

and its agents, served to the employees of The Defiance Clinic in August, 2005."

Hull Affidavit, p. 2.

{¶11} In November 2010, Appellees filed a joint reply to Serraino's memorandum in opposition to summary judgment.[3]

{¶12} On March 5, 2012, the trial court issued a judgment entry granting summary judgment in favor of Appellees.

{¶13} It is from that judgment Serraino files this timely appeal, presenting the following assignments of error for our review.

### Assignment of Error No. I

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES APPELLEES (sic) FAUSTER-CAMERON, INC., DBA DEFIANCE CLINIC AND THE BUREAU OF WORKERS' COMPENSATION.**

### Assignment of Error No. II

**THE TRIAL COURT ERRED IN DENYING APPELLANT LINDAMARIE SERRAINO'S MOTION FOR SUMMARY JUDGMENT.**

### Assignment of Error No. I

{¶14} In her first assignment of error, Serraino contends that the trial court erred when it granted summary judgment in favor of the Appellees. We disagree.

---

[3] We note that Appellees asserted an alternative argument in their joint reply to Serraino's memorandum in opposition. The Appellees, citing Dr. Hull's use of the phrase "salmonella disease" in his affidavit, argued that Serraino's claim must be treated as an occupational disease, pursuant to R.C. 4123.01(F), and not an injury, pursuant to R.C. 4123.01(C). If Serraino's claim was treated as an occupational disease, Appellees argued that she would not be eligible to receive workers' compensation benefits. Though Appellees reassert this argument on appeal, we decline to address it in light of our disposition of Serraino's first assignment of error.

{¶15} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist. 1999). Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distr. Co*., 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Ed*., 69 Ohio St.3d 217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id*. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

{¶16} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must

identify those portions of the record which affirmatively support his argument. *Id.* at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. *Id.*; Civ.R. 56(E).

{¶17} "The purpose of the Workers' Compensation Act is not to make an employer an absolute insurer of the employee's safety, but only to protect the employee against risks and hazards incident to the performance of his work." *Phelps v. Positive Action Tool Co.*, 26 Ohio St.3d 142, 144 (1986). R.C. 4123.01(C) defines a compensable injury under the Workers' Compensation Act as:

> * * * any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment.

Thus, to be compensable, an injury must occur "in the course of" *and* "arising out of," the claimant's employment. R.C. 4123.01(C); *Bralley v. Daugherty*, 61 Ohio St.2d 302, 303 (1980). The Supreme Court of Ohio has expressly recognized that this test is conjunctive in nature, requiring each prong to be satisfied before compensation is allowed. *Fisher v. Mayfield*, 49 Ohio St.3d 275, 277 (1990). As a general rule, the workers' compensation statute must be liberally construed in favor of the employee. R.C. 4123.95. Nevertheless, the claimant bears the burden

to prove both prongs of this two-prong formula. *Woodard v. Cassens Transport Co.*, 3d Dist. No. 14-11-22, 2012-Ohio-4015, ¶ 16, citing *Fisher* at 278.

{¶18} The "arising out of" prong employs a totality of the circumstances approach to determine "whether a causal connection existed between an employee's injury and his employment." *Fisher* at 277. In *Lord v. Daugherty*, 66 Ohio St.2d 441 (1981), the Supreme Court announced three factors to aid in determining whether a sufficient causal connection exists between an employee's injury and their employment, to wit: (1) the proximity of the scene of the accident to the place of employment; (2) the degree of control the employer had over the scene of the accident; and, (3) the benefit the employer received from the injured employee's presence at the scene of the accident.

{¶19} While the factors announced in *Lord* often prove sufficient in determining whether the injury arose out of the employee's employment, the list "is not intended to be exhaustive, but rather illustrative of the factors that need to be considered." *Fisher* at fn. 2; *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 122 (1998). This is so because workers' compensation cases are fact-intensive. *Fisher* at 280. As such, the Supreme Court has recognized that "no one test or analysis can be said to apply to each and every factual possibility. Nor can only one factor be considered controlling. Rather, a flexible and analytically

sound approach to these cases is preferable." *Id.* Bearing these standards in mind, we turn our attention to the facts of this case.

{¶20} Serraino argues that she contracted salmonella poisoning while on the Clinic's property. A review of the record, however, reveals that there is a dispute as to how, and consequently where, Serraino contracted salmonella poisoning. The DCHD was unable to determine the source of the salmonella bacteria that caused Serraino's poisoning. Despite the DCHD's inability to identify the source of the salmonella bacteria, Dr. Hull attested that Serraino contracted salmonella poisoning as a result of consuming contaminated food prepared by Classic Catering. Because Serraino is the nonmoving party against whom summary judgment was granted, we must construe the evidence in a light most favorable to her. Civ.R. 56(C). In doing so, we must conclude, for purposes of this appeal, that Serraino contracted salmonella poisoning while on the Clinic's property because she consumed the food prepared by Classic Catering in the Clinic's break room.

{¶21} Next, Serraino argues that the facts establish that the Clinic had control over the scene of the accident. Serraino relies on the Supreme Court's decision in *Fisher*, wherein the court explained that the proper scrutiny of the second *Lord* factor "entails the amount of control the employer had over the situs of the injury." *Fisher*, 49 Ohio St.3d at 279. Applying this standard, Serraino

-10-

argues that since she consumed the contaminated food in the Clinic's break room, over which the Clinic had control, we must conclude that the Clinic had control over the scene of the accident. Conversely, Appellees argue that in addition to the employer's control over the situs of the injury the second *Lord* factor should also be interpreted to include the activities giving rise to the injury.[4] Applying this interpretation, Appellees maintain that the Clinic had no control over Serraino's exposure to the salmonella bacteria. We agree with Appellees.

{¶22} As discussed above, workers' compensation cases are fact-intensive, and therefore no one test or analysis can be said to apply to every case. Given this reality, we must consider the scrutiny articulated in *Fisher* with respect to the facts in that case, and determine whether the scrutiny therein precludes consideration of the employer's control over all the activities giving rise to the injury.

{¶23} In *Fisher*, a teacher employed with a local school board was asked to coordinate a flower fund by a school building representative. The purpose of the fund was to provide flowers or other expressions of sympathy for the death of a co-worker's close family member, or congratulations upon an employee's marriage or the birth of a child. Contributions to the fund were voluntary and made by employees throughout the school district. On the day of the accident, the

---

[4] While the Appellees explicitly contend that the "second *Lord* factor must necessarily be interpreted more broadly to include the activities occurring at the scene of the accident[,]" Appellees' Br., p. 12, we interpret their argument in support of this contention as suggesting that we consider the amount of control the employer had over the activities giving rise to the injury.

teacher voluntarily stopped by a school, which was not her own but was under her employer's control, to collect proceeds for the flower fund. As the teacher was leaving the school, she missed a step and fell. On appeal, the employer argued that it had no control over the scene of the accident because it had no control over the teacher's voluntary actions of stopping by the school where she was injured. The Supreme Court disagreed, finding that the "proper scrutiny entails the amount of control the employer had over the situs of the injury, and not the degree of control the employer had regarding the actions of its employees." *Fisher* at 279.

{¶24} Upon consideration, we find that the scrutiny articulated in *Fischer* does not preclude courts from considering the employer's control over all the activities giving rise to the injury. The court expressly held that the second *Lord* factor encompasses the employer's control over the situs of the injury and not the employer's control over the actions of the employees. However, the court remained silent as to whether courts may consider the employer's control over activities, other than those of its employees, which give rise to the purportedly compensable injury. Indeed, this silence flows naturally from the facts and arguments presented in *Fisher*. There was no need in *Fisher* to address whether the activities giving rise to the injury may be considered because the teacher's fall was simply the result of missing a step. As a result, we find that *Fisher* does not preclude consideration of the employer's control over activities, other than those

of its employees, which give rise to the injury at issue. *See MTD Products, Inc. v. Robatin*, 61 Ohio St.3d 66, 70 (1991) (finding that employer did not have control over the scene of the accident because it controlled neither the public roadway where the accident occurred nor the negligent driver who caused the accident).

{¶25} Under the circumstances of this matter, we find that the proper scrutiny entails the amount of control the Clinic had over the situs of Serraino's injury *and* over the activities that gave rise to Serraino's injury. The situs of Serraino's injury, the Clinic's break room, was purely fortuitous, as she could have consumed the contaminated food anywhere on or off the employer's premises. Given this fact, we fail to see how the situs of Serraino's injury alone can provide an accurate picture of the Clinic's control over the scene of the accident.

{¶26} As discussed above, Serraino's injury occurred as a result of Classic Catering's activities. Accordingly, determining the amount of control the Clinic had over Classic Catering's activities is relevant in considering the second *Lord* factor. While the Clinic had control over the break room where Serraino consumed the contaminated food, it had little, if any, control over Classic Catering and the activities that gave rise to Serraino's injury. There was no contractual relationship between Classic Catering and the Clinic. The Clinic had no control or input over the food Classic Catering served to its employees, the purchase,

storage, or preparation of the food served to its employees, the transportation of the food from Classic Caterings' place of business to the Clinic, service of the food to the employees, or collection of payment. *Compare Williams v. Martin Marietta Energy Sys., Inc.*, 99 Ohio App.3d 520 (4th Dist. 1994) (finding that employee's injury, which occurred when a Red Cross worker attempted to draw his blood during a blood drive, did not arise out of his employment despite the following facts: (1) the employer invited the Red Cross to its place of business; (2) the injury occurred at the employer's place of business; (3) the employer's public relations department publicized the blood drive, registered employees, and prepared schedules of donors; (4) the employer's employees assisted the Red Cross staff in preparing the room where the blood drive occurred and served refreshments provided by the employer; and (5) the employer's medical staff was on alert during the blood drive in order to treat any medical complications that developed). Given the foregoing, the record reveals that the Clinic had little meaningful control over the scene of the accident.

{¶27} Alternatively, Serraino argues that the Clinic and Classic Catering were in a principal-agent relationship. As a result, Serraino maintains that the Clinic exercised sufficient control over Classic Catering to meet the second *Lord* factor. A principal-agent relationship exists "when one party exercises the right of control over the actions of another, and those actions are directed toward the

attainment of an objective which the former seeks." *Hanson v. Kynast*, 24 Ohio St.3d 171 (1986) paragraph one of the syllabus. Therefore, a principal-agent relationship can be found in this matter only if Classic Catering was under the Clinic's control, *and* if it took some action directed toward the attainment of the Clinic's objective.

{¶28} Contrary to Serraino's argument, Classic Catering was not under the Clinic's control. The Clinic simply opened its doors to Classic Catering and allowed them to serve food in its break room. As discussed above, the Clinic had no control over the food Classic Catering served, the purchase, preparation, and storage of the food, the transportation of the food, or the service of the food. Given this lack of control, we find that the Clinic and Classic Catering were not in a principal-agent relationship. Accordingly, Serraino's alternative argument is unavailing.

{¶29} Next, Serraino argues that the Clinic benefited from her presence at the scene of the accident. Serraino's argument is dependent on the fact that the lunch program was implemented with the purpose of improving the Clinic's work environment, which, purportedly benefits the Clinic. Conversely, Appellees argue that since Serraino was on an unpaid lunch break, was not required to eat the caterer's food, and the Clinic received no proceeds from the caterer's sales, the

Clinic experienced no benefit from her presence at the scene of the accident. We agree with Serraino, but for different reasons.

{¶30} Serraino's ability to eat a catered lunch in the break room benefited the Clinic. Serraino contracted salmonella poisoning while she was undergoing training. Serraino testified that she ate the catered lunches so she could quickly return to her training. An employee who does not miss or receives more training generally benefits the employer. Under the unique circumstances of this matter, however, we find that this perceived benefit offers little insight into the causal connection between Serraino's injury and her employment.

{¶31} Having examined the totality of the circumstances, and construing the facts in Serraino's favor, we find, as a matter of law, that there is an insufficient causal connection between Serraino's salmonella poisoning and her employment with the Clinic. The location of Serraino's poisoning was fortuitous, as she could have consumed the contaminated food anywhere on or off the employer's premises. Moreover, the fact that Serraino contracted salmonella poisoning while eating in the Clinic's break room bears little, if any, significance in determining whether there was a causal connection between her poisoning and her employment. Additionally, the benefit the Clinic received by Serraino's presence in the break room bears little significance in determining whether there was a causal connection between Serraino's poisoning and her employment.

*Compare Coston v. Carnegie-Illinois Steel Corp.*, 125 N.E.2d 736 (1952) (finding that employee's injury sustained by eating a piece of pie containing glass did not arise out of employment, where the piece of pie was purchased in a restaurant on employer's premises, which was operated by an independent contractor, the employee was not furnished meals, and was not required to patronize the restaurant).

{¶32} Rather than focusing on these insignificant facts, we center our review on the Clinic's control, or lack thereof, over the scene of the accident. Under the circumstances in this matter, this provides the best insight as to whether there was a causal connection between Serraino's poisoning and her employment. Although the Clinic invited Classic Catering to serve food in its break room, over which it had control, it had absolutely no control over Classic Catering's activities, which exclusively gave rise to Serraino's poisoning. *Compare Sebek v. Cleveland Graphite Bronze Co.*, 148 Ohio St. 693 (1947) (finding that employee in a cafeteria, who received meals as a part of her compensation under her contract of hire and who allegedly contracted ptomaine poisoning from eating contaminated food prepared and furnished by her employer, sustained an injury arising out of her employment), overruled in part by *Johnson v. Indus. Comm. of Ohio*, 164 Ohio St. 297 (1955). Given the Clinic's lack of control over that which gave rise to Serraino's injury, we find, as a matter of law, that there is an insufficient causal

connection between her poisoning and her employment. Consequently, her poisoning did not arise out of her employment.

{¶33} Since Serraino's poisoning did not arise out of her employment, there is no need to consider whether her poisoning was suffered in the course of her employment, as both must be established before an employee may participate in the workers' compensation fund. *Fisher*, 49 Ohio St.3d at 277.

{¶34} Accordingly, we overrule Serraino's first assignment of error.

*Assignment of Error No. II*

{¶35} In her second assignment of error, Serraino contends that the trial court erred in denying her motion for summary judgment. In light of our disposition of Serraino's first assignment of error, her second assignment of error is moot and we decline to address it. App.R. 12(A)(1)(c).

{¶36} Having found no error prejudicial to Serraino herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**